Argued and submitted May 30, 1990, affirmed March 20, reconsideration allowed by
opinion May 22, 1991
See 107 Or App 284, 812 P2d 831 (1991)

# STATE OF OREGON
## and the City of Portland,
### *Respondents,*

*v.*

# PAUL JAY LONG,
### *Appellant.*

## (DA 363899; CA A61733)

807 P2d 815

Henry M. Silberblatt, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

Joseph, C. J., specially concurring.

## ROSSMAN, J.

Defendant appeals his convictions for unlawful possession of a concealed firearm, ORS 166.250, and for carrying a loaded firearm. Portland City Code § 14.32.010 (PCC). We write to address only two questions:[1] (1) whether the Portland ordinance is preempted by the state statute prohibiting concealed firearms possession; and (2) whether the trial court abused its discretion in giving the "witness false in part" jury instruction. We answer both questions in the negative and affirm defendant's convictions.

On February 24, 1988, Portland Police Officer Nelson received a report from his dispatcher of possible drug dealing involving a van parked outside a doughnut shop at Southeast 12th and Hawthorne. A doughnut shop employee had called the police to voice his suspicions and to provide the description and license plate number of the van. Nelson arrived at the doughnut shop as the van was leaving and followed it for a few blocks. He then learned from the dispatcher that the van was sought by the Washington police in connection with a felony. He stopped defendant and asked for identification. When questioned about the Washington matter, defendant responded that he had "taken care of that."

A backup officer, Akers, arrived and approached the passenger side of the van; he looked in and saw what appeared to be a pistol. In the meantime, defendant had explained to Nelson that he was carrying a "realistic looking" BB gun in the van. Defendant denied that there were any other weapons in the van and consented to its search. Akers saw a gym bag inside and asked defendant what it contained. Both defendant and his passenger denied ownership of the bag or any knowledge of its contents. Defendant consented to its search. The police searched the bag and discovered a loaded sawed-off shotgun and some ammunition. They seized the bag, the ammunition and the weapon. A short time later, Nelson received a message from the dispatcher to disregard the earlier report that the van was sought by the Washington police. Defendant and his passenger were charged with violating both the state statute prohibiting possession of a concealable

---

[1] Defendant makes two other assignments of error; they do not merit discussion.

weapon and the Portland ordinance prohibiting carrying a loaded firearm.

■ Defendant first argues that the trial court erred in denying his demurrer to the complaint. He contends that the state statute preempts the city ordinance,[2] because the ordinance is more restrictive than the statute and, therefore, the laws are incompatible.

PCC § 14.32.010(c) defines the offense of carrying or discharging a loaded firearm. It prohibits a person on a public street or in a public place from carrying a firearm

"upon his person, or in a vehicle under his control or in which he is an occupant, unless all ammunition has been removed from the chamber and from the cylinder, clip or magazine."

In contrast, ORS 166.250(1)(c) (*since amended by* Or Laws 1989, ch 839, § 13)[3], the statute under which defendant was convicted, defined the crime of unlawful possession of a firearm. It prohibited a person from "knowingly" carrying

"concealed and readily accessible about the person within any vehicle which is under the person's control or direction any firearm capable of being concealed upon the person, without having a license to carry such firearm[.]"

The 1985 Legislature added the knowledge requirement and the phrase "readily accessible." Or Laws 1985, ch 543, § 3.

ORS 166.245 gives cities and counties the authority to regulate the possession of firearms and ammunition, but only in public places[4] and only so long as the ordinance does not conflict with state law. The prohibition in PCC §

---

[2] In *State v. Boyce,* 61 Or App 662, 658 P2d 577, *rev den* 295 Or 122 (1983), we examined the same ordinance and described it as prohibiting the possession of loaded firearms in public places within the city limits. In response to the defendant's preemption argument, we answered that "he does not cite a statute that either conflicts with the ordinance or reserves this type of regulation to the state. Because we know of none, we find this argument unpersuasive." 61 Or App at 666 n 3.

[3] The only relevant change was that the prohibition against "any firearm capable of being concealed upon the person" was modified to change "firearm" to "handgun." The provision has been renumbered as ORS 166.250(1)(b).

[4] Defendant does not contend that his vehicle was not in a "public place" within the meaning of ORS 166.245 and PCC § 14.32.010(c). Therefore, for purposes of this case, we assume that it was. Because he consented to the search, he had no privacy interest in the use of his vehicle in a public place. *See State v. Holt,* 291 Or 343, 352, 630 P2d 854 (1981).

14.32.010(c) is limited to public places and is consistent with the regulatory authority granted by ORS 166.245. However, elements of the offense under the ordinance differ from the elements under state law. Defendant contends that the difference means that the ordinance is preempted. We disagree.

In *Denton Plastics v. City of Portland,* 105 Or App 302, 305, 804 P2d 1199 (1991), we articulated a two-step preemption analysis: (1) Does the ordinance conflict with state law? (2) If so, did the legislature intend to permit a conflict? Legislative permission "can range from express permissive terms to total inattention and indifference to a subject." *City of Portland v. Lodi,* 308 Or 468, 474, 782 P2d 415 (1989). There are two types of conflict. The first is facial, when an ordinance directly contradicts a state law in an area of substantive policy. In the criminal context, the facial conflict arises because the ordinance prohibits an act that the state permits or permits an act that the state prohibits. *City of Portland v. Dollarhide,* 300 Or 490, 502, 714 P2d 220 (1986). If the laws conflict facially, the ordinance is preempted, because the legislature has made a political policy decision. *See City of Portland v. Lodi, supra,* 308 Or at 474 (1989).

The second type of conflict is when laws dealing with the same subject differ in part but are still compatible as a whole. *See City of Portland v. Dollarhide, supra,* 300 Or at 498-99; *Harlow v. Clow,* 110 Or 257, 223 P 541 (1924). This type of conflict is not necessarily fatal to the ordinance. For example, a criminal ordinance and a state statute may prohibit the same general act, but there may be differences in either the elements of, or penalties for, the offenses. In that situation, there is a rebuttable presumption that the ordinance is preempted because of Article XI, section 2, of the Oregon Constitution. *See Denton Plastics v. City of Portland, supra,* 105 Or App at 306; *see also* 6 McQuillan, *Municipal Corporations,* § 23.05, 507 (3d ed, 1988 rev).

A criminal ordinance that conflicts with state law in that way overcomes the presumption if it is shown that the legislature made a political decision not to preempt. If such a decision was made, the legislature has determined that the ways in which the ordinance differs are properly left within municipal power. An ordinance may complement a field not exclusively occupied by state law.

In this case, the two provisions deal with the same subject, but they do not facially conflict. They can operate concurrently because, although both address firearms possession in general, they are directed to different concerns. The statute addresses possession and transportation of unlicensed concealed firearms within the state. In contrast, the ordinance addresses the discharge, or possible discharge, of loaded firearms in public places within the city limits.

However, the laws are inconsistent in part, because there are differences in the elements of the offenses. The statute permits carrying loaded firearms, if they are licensed and unconcealed. The ordinance prohibits carrying loaded firearms, even if they are licensed. Nevertheless, the legislature intended not to preempt the field of firearms possession, and that intent overcomes the presumption in favor of preemption. The legislative history of the 1985 amendment to ORS 166.250(1)(c) reveals that, although the legislature considered a provision expressly preempting local ordinances on firearms possession, it did *not* adopt such a provision. HR 2855, 63rd Leg Reg Sess (1985).

> "The search for a negative decision, in the context of preemption, can involve variations ranging from mere inaction on a bill or other proposal, * * * to rejection of a proposal by vote after debate * * *, which may be a collective decision although it also falls short of affirmative lawmaking." *City of Portland v. Lodi, supra,* 308 Or at 474.

The statute granting municipalities the authority to regulate firearms possession only in public places, ORS 166.245, further demonstrates that the state has not preempted the field. Therefore, the trial court properly denied defendant's demurrer to the complaint.

■ We turn now to defendant's argument that the trial court improperly gave the "witness false in part" jury instruction[5] over his objection. Reversal is permissible only if the

---

[5] Uniform Criminal Jury Instruction 1023 provides:

"A witness who lies under oath in some part of his or her testimony is likely to lie in other parts of his or her testimony. Therefore, *if you find that a witness has lied in some part of his or her testimony, then you may distrust the rest of that witness's testimony.*

"Sometimes witnesses who are not lying may give incorrect testimony. They may forget matters or may contradict themselves. Also, different witnesses may observe or remember an event differently.

"You have the sole responsibility to determine what testimony, or portions of testimony, you will or will not rely upon in reaching your verdict." (Emphasis supplied.)

trial court abused its discretion in giving the instruction. *Ireland v. Mitchell,* 226 Or 286, 295, 359 P2d 894 (1961).

■      The trial court is to instruct the jury "on all proper occasions * * * [t]hat a witness false in one part of the testimony of the witness is to be distrusted in others." ORS 10.095(3). The "proper occasion" for giving a statutory instruction is when the evidence provides the basis for it. *Ireland v. Mitchell, supra,* 226 Or at 291. The party requesting the instruction must show, and the trial court must find, that there is sufficient evidence for the jury to decide that a witness was "wilfully false," not just mistaken, confused or hazy in recollection. *See Cox v. Gustafson,* 261 Or 159, 162, 493 P2d 52 (1972); *State v. Bonner,* 241 Or 404, 408, 406 P2d 160 (1965). Defendant contends that the only possible basis for the requested instruction was a conflict between his testimony and the officer's:

> "[D]efendant stated that he fully explained the circumstances of the prior seizure and release of his vehicle and possibly displayed the release form, and Officer Nelson recalled only that defendant said he 'had taken care of it,' without further elaboration or display of any forms. *This difference in testimony does not rise to the level showing intentional disdain of the truth.*" (Emphasis supplied.)

We do not agree that the inconsistency in testimony could not indicate that defendant was wilfully false, especially in a case like this, where defendant and Nelson are clearly not in agreement. The jury, as the exclusive judge of credibility, is called on to tell what the truth really is.

■      We agree that the mere fact that the testimony of a witness is contradicted is not conclusive as to its falsity, *see Simpson v. Miller,* 57 Or 61, 65, 110 P 485 (1910); nevertheless, that contradiction is a relevant factor in the jury's evaluation of credibility. Given the inconsistency, the jury could have disbelieved part of defendant's testimony and, if it disbelieved one portion, it could have disbelieved other portions. The instruction makes no demand on the jury; it simply describes what the jury is empowered to do. The trial court did not abuse its discretion.

Affirmed.

**JOSEPH, C. J.**, specially concurring.

I agree with the majority that there are only two assignments of error that merit discussion. I concur in the disposition of the preemption issue, even though I think that that body of law has been made unnecessarily murky by intellectual game playing. That is not our doing, and we can do little about it.

With respect to the issue relating to the "witness false in part" jury instruction, I concur only in the result. I do not agree that the issue is whether "the trial court abused its discretion in giving the instruction," as the issue is stated by the majority. The issue stated by defendant is whether this was a "proper occasion" for the instruction. It probably was, under the case law as it now stands.[1] However, I believe that the case law deserves reconsideration and reconstruction.

The instruction prescribed by ORS 10.095(3) is that a "witness false in one part of the testimony of the witness [*sic*] is to be distrusted in others." However, the uniform instruction, which was given in this case, goes beyond the statute. In addition to stating a variation of the statutory language, it says that a "witness who lies under oath in some part of his or her testimony *is likely* to lie in other parts of his or her testimony." 106 Or App at 394 n 5. (Emphasis supplied.) The emphasized language says something that the statute does not, and I think it runs afoul of the case law about the statutory instruction. In *Ireland v. Mitchell,* 226 Or 286, 290, 359 P2d 894 (1961), the court said that the statutory "false in part" instruction is "advisory to the jury. The jury may reject a witness' testimony, but it need not do so." In *State v. Seeger,* 4 Or App 336, 479 P2d 240 (1971), we followed *Ireland* and held that it was error to instruct the jury that "it's your duty to disregard all of that witness' testimony." *See also State v. Ketchum,* 4 Or App 342, 479 P2d 255 (1971). To tell the jury that a witness is *likely* to have lied does not *quite* require it to disregard his testimony, but it certainly points the jury in the direction that the cases say that it is not obligated to go. Therefore, the uniform instruction is inconsistent with the

---

[1] The "inconsistent testimony" that supposedly supports giving the instruction, 106 Or App at 395, is singularly irrelevant to any issue in the case.

statute, is erroneous and ought never be given. Unfortunately, defendant does not raise this point.

There are at least two problems with the "false in part" instruction, even when it does track the statute. First, when the defendant is one of the candidates for the "false in part" characterization, as here, the instruction may amount to an instruction on an inference that impermissibly shifts the burden of proof to the defendant. *See State v. Rainey,* 298 Or 459, 693 P2d 635 (1984). Although the instruction does not relate to a particular element of a charged offense, it could of course subject a defendant's exculpatory testimony on all of the elements of the offense to an inference of falsehood and, in turn, guilt.

The second problem is that the instruction is a patent comment on the evidence. It tells the jury to view a witness' testimony with distrust when, just as rationally, the jury could believe that the witness lied about X for reasons that have no bearing on his testimony about Y. In *State v. Bonner,* 241 Or 404, 408, 406 P2d 160 (1965), the court held that an instruction that singled out the defendant's testimony as being potentially false in part "amounted to a comment on the evidence." The court then said, however, that a "general instruction covering the matter was properly given as to all witnesses."

The distinction escapes me. The particularized instruction was obviously prejudicial to the defendant, but the general instruction was no less a comment on the evidence. It told the jury to distrust more than one witness, on the basis of evidence that it did not need to consider to warrant distrust. Stated simply, the instruction tells a jury what evidence it should consider in weighing credibility. Moreover, the "false in part" formulation can add nothing to a neutrally worded instruction about determining credibility. It is enough to instruct the jury that it is its responsibility to decide whom to believe, if there is conflicting evidence, and to make credibility determinations in performing that responsibility.

Because the "false in part" instruction is statutory, it may be that the comment on the evidence rationale is not enough to support a holding that it should not be given. The same problem exists to a lesser degree in connection with the instruction on an inference rationale. The court based its

decision in *State v. Rainey, supra,* on statutory grounds. However, there are constitutional underpinnings in its reasoning that an instruction on an inference dilutes the defendant's right to have the state prove guilt beyond a reasonable doubt. *In Re Winship,* 397 US 358, 364, 90 S Ct 1068, 25 L Ed 2d 368 (1970).

I accept the majority's result, even though the law is wrong.