Argued and submitted January 25, resubmitted In Banc November 6, 1991, affirmed February 12, reconsideration denied April 22, petition for review allowed June 23, 1992 (313 Or 354)

CITY OF PORTLAND,
*Appellant,*

*v.*

Lugene Alva JACKSON,
*Respondent.*

(DA 396491-8906; CA A64089)

826 P2d 37

234

Madelyn F. Wessel, Deputy City Attorney, Portland, argued the cause and filed the brief for appellant.

Joan Peterson, Multnomah Defenders, Inc., Portland, argued the cause and filed the brief for respondent.

RICHARDSON, J.

Warren, J., dissenting.

## RICHARDSON, J.

Defendant was charged with indecent exposure under Portland City Code (PCC) § 14.24.060. He demurred, contending that ORS 163.465 preempts the ordinance. The trial court agreed and dismissed the charge. The city appeals, and we affirm.

PCC § 14.24.060 provides, in part:

"It is unlawful for any person to expose his or her genitalia while in a public place or place visible from a public place, if the public place is open or available to persons of the opposite sex."

ORS 163.465 provides, in part:

"(1)   A person commits the crime of public indecency if while in, or in view of, a public place the person performs:

"* * * * *

"(c)   An act of exposing the genitals of the person with the intent of arousing the sexual desire of the person or another person."

Because the general issue with which we are concerned has arisen so frequently and been treated so variably by the two appellate courts in recent years, we begin by discussing the relevant precedent in some detail. Under Article XI, section 2, one of the Home Rule Amendments to the Oregon Constitution, the legislative authority of cities is made "subject to the Constitution and criminal laws of the State of Oregon." In *La Grande/Astoria v. PERB*, 281 Or 137, 148-49, 576 P2d 1204, *on rehearing* 284 Or 173, 586 P2d 765 (1978), the Supreme Court explained generally how the criminal law "reservation" in the amendment bears on whether municipal criminal legislation is preempted by state law:

"It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the [state] legislature does not mean to displace local civil or administrative regulation[18] of local conditions by a statewide law unless that intention is apparent.

"[18]   The reservation in [A]rticle XI, section 2, *supra*, regarding state criminal law reverses this assumption with respect to such laws."

La Grande/Astoria was concerned with civil legislation. The court first had occasion to apply its dictum to criminal legislation in *City of Portland v. Dollarhide*, 300 Or 490, 714 P2d 220 (1986), where the issue was whether the city ordinance provisions criminalizing and fixing the penalty for prostitution were preempted by the state prostitution statutes. The court said:

"The essential test for displacement of local ordinances (civil or criminal) by state law is whether the local rule is 'incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive.' [*La Grande/Astoria v. PERB*, 281 Or 137, 148, 576 P2d 1204, *on rehearing* 284 Or 173, 586 P2d 765 (1978).] In the area of civil or administrative ordinances regulating local conditions, it is reasonable to assume that the legislature did not mean to displace local ordinances, unless that intention is apparent. *See, e.g., State ex rel Haley v. City of Troutdale*, 281 Or 203, 576 P2d 1238 (1978) (finding no manifest legislative intent to exclude local provisions which 'supplemented' the state building code). The reservation in Article XI, section 2, however, reverses this assumption with respect to state criminal law.

"The analysis of compatibility begins then with the assumption that state *criminal* law displaces conflicting local ordinances which prohibit and punish the same conduct, absent an apparent legislative intent to the contrary. * * *

"The inquiry does not end here, of course, because we have yet to decide how much symmetry between state and city criminal laws is required by Article XI, section 2, so as not to be in conflict. *Harlow v. Clow*, [110 Or 257, 223 P 541 (1924), *overruled on other grounds, Landreth v. Gladden*, 213 Or 205, 223, 324 P2d 475 (1958)], a case decided relatively close in time to the adoption of Article XI, section 2, suggests that, in order that the defining elements of a city's crime not conflict with state law, they must virtually 'duplicate' the state law elements. We state the rule that in determining whether the defining and prohibiting provisions of a city criminal ordinance conflict with a state criminal statute, the test is whether the ordinance prohibits an act which the statute permits, or permits an act which the statute prohibits." 300 Or at 501-02. (Emphasis in original; footnote omitted.)

Applying those principles, the court concluded that the prohibitory aspects of the ordinance, which virtually duplicated

the state statute, were not preempted, but that the city penalty, which exceeded that under the statute, was "displaced."

The Supreme Court revisited the issue in *City of Portland v. Lodi*, 308 Or 468, 782 P2d 415 (1989), where the question was whether the city prohibition of carrying a concealed pocketknife with a blade longer than a specified length was preempted by ORS 166.240, the state statute that criminalizes carrying certain concealed knives but not knives of the kind in question. The court said:

> "The preemption issue arises under Article XI, section 2, of the Oregon Constitution, which authorizes the voters of a city to enact and amend the city's charter 'subject to the Constitution and criminal laws of the State of Oregon.' The background of the quoted phrase and its judicial interpretation were reviewed in *City of Portland v. Dollarhide*, 300 Or 490, 714 P2d 220 (1986). That decision involved a penal ordinance which prohibited prostitution in terms essentially identical to the state's criminal code but, unlike the state law, imposed mandatory minimum penalties. This court held that the primacy of the state's criminal law over city penal ordinances forbade the city not only to extend the reach of an offense but also to increase the penalties for a substantively identical offense without a showing of legislative consent to such an extension.

> "* * * * *

> "The City further objects to the Court of Appeals' conclusion that the statute permits the carrying of the kind of concealed knife that the ordinance prohibits. The Court of Appeals drew from *Dollarhide*, 300 Or at 502, the proposition that a city 'cannot prohibit an act that the statute permits,' 94 Or App at 738. The City argues that statutory silence should not be construed as 'permission.'

> "The word 'permits' lends itself to this argument, but the preemption issue is the same without the word. In theory, what the legislature 'permits' can range from express permissive terms to total inattention and indifference to a subject. The search is not for particular words but for a political decision, for what the state's lawmakers either did or considered and chose not to do. The search for a negative decision, in the context of preemption, can involve variations ranging from mere inaction on a bill or other proposal, which hardly represents a collective judgment, to rejection of a

proposal by vote after debate (perhaps even after passage by one house), which may be a collective decision although it also falls short of affirmative lawmaking." 308 Or at 471-74. (Footnote omitted.)

The court then looked to the legislative history of the statute, and discerned an intent to disallow the criminalization of carrying concealed knives of the kind prohibited by the city. The court based its decision on affirmative evidence of a preemptive intent. Although it nominally reiterated the assumption of preemption standard, its decisional analysis assumed nothing.

We applied the *Dollarhide-Lodi* principles in *Denton Plastics, Inc. v. City of Portland*, 105 Or App 302, 804 P2d 1199 (1991), and *State v. Long*, 106 Or App 389, 807 P2d 815, *clarified* 107 Or App 284, 812 P2d 831 (1991). We summarized in *Long*:

"In *Denton Plastics[, Inc.] v. City of Portland*, 105 Or App 302, 305, 804 P2d 1199 (1991), we articulated a two-step preemption analysis: (1) Does the ordinance conflict with state law? (2) If so, did the legislature intend to permit a conflict? Legislative permission 'can range from express permissive terms to total inattention and indifference to a subject.' *City of Portland v. Lodi*, 308 Or 468, 474, 782 P2d 415 (1989). There are two types of conflict. The first is facial, when an ordinance directly contradicts a state law in an area of substantive policy. In the criminal context, the facial conflict arises because the ordinance prohibits an act that the state permits or permits an act that the state prohibits. *City of Portland v. Dollarhide*, 300 Or 490, 502, 714 P2d 220 (1986). If the laws conflict facially, the ordinance is preempted, because the legislature has made a political policy decision. *See City of Portland v. Lodi, supra*, 308 Or at 474 (1989).

"The second type of conflict is when laws dealing with the same subject differ in part but are still compatible as a whole. *See City of Portland v. Dollarhide, supra*, 300 Or at 498-499; *Harlow v. Clow*, 110 Or 257, 223 P 541 (1924). This type of conflict is not necessarily fatal to the ordinance. For example, a criminal ordinance and a state statute may prohibit the same general act, but there may be differences in either the elements of, or penalties for, the offenses. In that situation, there is a rebuttable presumption that the ordinance is preempted because of Article XI, section 2, of the Oregon

Constitution. *See Denton Plastics[, Inc.] v. City of Portland, supra*, 105 Or App at 306; *see also* 6 McQuillan, *Municipal Corporations*, § 23.05, 507 (3d ed, 1988 rev).

"A criminal ordinance that conflicts with state law in that way overcomes the presumption if it is shown that the legislature made a political decision not to preempt. If such a decision was made, the legislature has determined that the ways in which the ordinance differs are properly left within municipal power. An ordinance may complement a field not exclusively occupied by state law." 106 Or App at 393.

We found no conflict between the state and local provisions in *Denton Plastics* or *Long*, and we found a legislative decision not to preempt in *Long*, in part because the legislature had considered but not adopted an express preemption provision.

It is difficult to fathom, under the existing Oregon authority, what the questions are in preemption cases, let alone the answers. The uncertainty begins with the language that we have quoted from *Dollarhide*. It first states that the "essential test," in the criminal as well as the civil context, is whether the local provision is incompatible with state law, because the two cannot operate concurrently or because the state legislature intended its law to be exclusive. The court then restated the *La Grande/Astoria* proposition that "displacement" is "assumed" in the context of criminal law. However, the court immediately restated that proposition, with the intended or unintended modifier that it applies only to *conflicting* local legislation, which, in the absence of clearly expressed legislative intent to tolerate it, is preempted. The court then went on to define the test for a conflict as being whether the ordinance prohibits what the statute permits or permits what the statute prohibits.

At least three possible and partially inconsistent standards inhere in the *Dollarhide* formulation: (1) There is an assumption of preemption of all local criminal laws; (2) the assumption applies only when the state and local provisions conflict; or (3) there is an assumption that they do conflict. *Dollarhide* also leaves unexplained how any or all of those tests tie back to the two components in its "essential test," *i.e.*, concurrent operation and intended exclusivity. However, the overriding difficulty in applying *Dollarhide* is not that its precise meaning is unclear; rather, it is that *Dollarhide*

contains language to support almost *every* imaginable rationale and result in every preemption case.

    *Lodi* does nothing to ameliorate the confusion. It emphasizes that the legislature must have made a political decision but, against the backdrop of *Dollarhide* and *La Grande/Astoria*, it is unclear whether that decision must have been one to permit what the local legislation prohibits or one that negates a preemptive intent. Read in isolation, *Lodi* is susceptible to the understanding that the "assumption" of preemption was abandoned there. *See Denton Plastics, Inc. v. City of Portland, supra*, 105 Or App at 306-07. However, *Lodi stated* the court's adherence to the assumption principle, even though it did not apply it.

    Although they are internally sensible, *Denton Plastics* and *State v. Long, supra*, are hard to reconcile with *Dollarhide*. Many of the tests or possible tests under the Supreme Court's opinion seem to disappear in *Denton Plastics* and *Long*; they are replaced by the questions of whether the provisions conflict and, if so, whether the legislature intended to allow the conflict. Some of the *Dollarhide* tests remain as sub-questions in *Long* and *Denton Plastics*, but their ultimate search is for conflict rather than for the "essential" *Dollarhide* factors of concurrent operation and intended exclusivity. Also, the "assumption" of preemptive intent, to which the Supreme Court decisions refer, was converted into a "rebuttable presumption" in our two decisions.

■    The term "assumption" in *La Grande/Astoria* and *Dollarhide* may have been an unfortunate and probably unintended word choice, insofar as it implies an evidentiary presumption. The meaning of legislation is a question of law. We therefore understand the court's meaning to have been that the "reservation" for state criminal law in Article XI, section 2, lends guidance to discerning the legislature's intent to preempt or not to preempt; however, it does not make the determination of legislative intent a matter of presumptions, burdens of proof or weighing of evidence, instead of the question of law that it always has been and necessarily must be.

■ ■    Nevertheless, the word "assumption" in the Supreme Court opinion necessarily means that the search for legislative intent in criminal law preemption cases does not begin in equipoise: The starting premise is that preemption was intended unless the language or history of the statute indicates otherwise. There is no magic formula for applying the assumption. A nonpreemptive intent can be manifested through express statutory language that allows local legislation, *see State v. Lopez-Vega*, 111 Or App 252, 826 P2d 48 (1992); through the defeat of a bill that would have been expressly preemptive, *see State v. Long, supra*; and through myriad other ways, affirmative and negative, that statutory language and legislative history can reveal a particular intent.[1]

■    The existence of conflict between state and local enactments, and of the legislature's intent whether to tolerate it, is not, as we suggested in *Denton Plastics* and *Long*, the exclusive focus of preemption analysis. The existence of conflict will usually answer the first of the two "essential" questions under *Dollarhide*—whether the statute and the ordinance can operate concurrently. However, it has little to do with the second question—whether the legislature meant its law to be exclusive. *Denton Plastics* and *Long* read *Dollarhide* wrongly, to the extent that they understand it to say that the critical search is for a legislative intent to allow *conflicting* local legislation; rather, notwithstanding its acknowledgment of an occasional legislative intent *not* to displace *conflicting* local laws, the essential concern in *Dollarhide* was with the preemption of any local criminal enactments, conflicting or not, and the court said that local legislation that does not conflict with state statutes may nevertheless be preempted if the legislature intended its law to be exclusive.

■    *Denton Plastics* and *Long* are incorrect in their premise that local legislation that differs from state law, but

---

[1] In *City of Portland v. Dollarhide, supra*; 300 Or at 499-500, the court rejected the proposition that the Criminal Code of 1971 was intended to preempt *all* municipal criminal legislation. Indeed, at least one proposal that would have substantially restricted local authority to adopt criminal regulations failed. *See* Minutes, Criminal Law Revision Commission, May 14, 1970, at 13-16. Nevertheless, *Dollarhide* did not discuss and does not allow the conclusion that, the 1971 legislation reveals a *general* intent *not* to preempt city criminal laws.

is "compatible as a whole" with it, is "conflicting" legislation within the meaning of *Dollarhide*. Legislation of that kind satisfies the *Dollarhide* standard of being capable of operating concurrently with state law. *See* 300 Or at 498-99. *City of Portland v. Lodi, supra,* on which our cases relied, does not support the conclusion that the focus of all preemption analysis is on the existence of conflict and on the state legislature's intent to tolerate it or not. *Lodi* happened to deal only with those questions, because the court concluded there, on the basis of perceived legislative intent, that the ordinance prohibited what state statute permitted. *Lodi* does not suggest, contrary to *Dollarhide*, that that is the end point of the inquiry in all criminal law preemption cases, and it certainly does not end the inquiry in cases such as *Denton Plastics* and *Long*, where the local and state provisions were not in conflict.[2]

■■   The *Dollarhide* tests were presumably meant to be internally consistent and susceptible to practical application. Hence, we understand "conflict" to mean the converse of capability of concurrent operation, and the test for both is whether an ordinance permits or prohibits what a statute treats in the opposite way. If the answer is yes, the ordinance is preempted, unless there is a clear statutory intent to the contrary. If the answer is no, the question remains whether the legislature intended its law to be exclusive in the area. The other "tests" in *Dollarhide* have no bearing on that question. It turns on legislative intent, which is to be discerned from the usual sources, subject to the "assumption" of a preemptive intent. To the extent that *Denton Plastics, Inc. v. City of Portland, supra,* and *State v. Long, supra,* are inconsistent with what we have said here, we overrule them, and we leave it to the Supreme Court to make any revisions in its own case law that it might recognize as appropriate.

---

[2] There is language in *Denton Plastics* and *Long* that adverts to the other tests under *Dollarhide*. Unfortunately, our concern here must be with the confusion and inconsistencies in the existing law and in the cases.

The dissent says that this opinion "suggests that local criminal ordinances are preempted unless they are virtually identical with a state statute." 111 Or App at 251. We do not know where the dissent finds that suggestion. However, that suggestion *is* latent in the *Denton-Plastics-Long* formulation that state and local provisions that are compatible as a whole may nevertheless be in conflict.

■    We turn to the specific issue in this case. Defendant argues that the ordinance conflicts with ORS 163.465, because the ordinance prohibits an act that the statute permits. ORS 163.465 prohibits public exposure when it is done with the intent of arousing sexual desire. PCC § 14.24.060 prohibits public exposure, without regard to whether the act is done with the intent to arouse. As in *Lodi*, the legislative history here reveals an intent to permit what the city ordinance prohibits. In the Commentary to Tentative Draft No. 1 of the Proposed Oregon Criminal Code, the Criminal Law Revision Commission discussed what would become ORS 163.465:

> "Indecent or lewd exposure of the person to the public view is a common law misdemeanor and it has been made a specific offense under many state statutes.
>
> "Subsections (1) and (2) proscribe the performance of certain sexual activity in a public place. There is no *mens rea* requirement here; the commission of the act in public for whatever reason constitutes the offense.
>
> "Subsection (3) requires an intent to arouse the sexual desire of the actor or another. *An accidental or negligent exposure would not violate this section.*" *Commentary to Proposed Oregon Criminal Code* 70, Tentative Draft No. 1, § 17 (February, 1970). (Emphasis supplied.)

*See also* Minutes, Criminal Law Revision Commission, December 13, 1969, p 57.

In addition, the legislature considered and rejected an amendment that would have eliminated the "intent" requirement in ORS 163.465. The predecessor statutes, *former* ORS 167.145 and *former* ORS 161.310[3] (*repealed by* Or

---

[3] *Former* ORS 167.145, prohibiting indecent exposure, provided:

"Any person who wilfully and lewdly exposes his person or the private parts thereof in any public place, or in any place where there are present other persons to be offended or annoyed thereby, or takes any part in any model artist exhibition, or makes any other exhibition of himself to public view, or to the view of any number of persons, which is offensive to decency, or is adapted to excite vicious or lewd thoughts or acts shall be punished upon conviction by imprisonment in the county jail for not less than three months nor more than one year, or by a fine of not less than $50 nor more than $500."

*Former* ORS 161.310, provided:

"If no punishment is expressly prescribed for the act by the criminal statutes, any person who wilfully and wrongfully commits any act which grossly injures the person or property of another, or which grossly disturbs the public

Laws 1971, ch 743, § 432), did not make the intent to arouse sexual desire an element of the offense. The House Committee on the Judiciary considered an amendment to delete the "intent" requirement from ORS 163.465(1)(c), but it was not adopted by the Committee. *See Minutes,* House Committee on the Judiciary, May 17, 1971, p 5.

We conclude that the legislature intended in ORS 163.465 to permit what the ordinance proscribes. The city argues, however, that the legislative history of the state criminal code as a whole negates a preemptive intent: It contends that ORS 166.025[4] prohibits the public exposure of genitalia without the intent to arouse. The city relies on the Commentary to the Final Draft of the Proposed Oregon Criminal Code:

> "Paragraph (c) [of ORS 163.465(1)] requires an intent to arouse the sexual desire of the actor or another. *An exposure that is not sexually motivated would not violate this section, but might be 'disorderly conduct.'* " *Commentary to Proposed Oregon Criminal Code* 129, Final Draft and Report, § 120 (July, 1970). (Emphasis supplied.)

■    Even if non-sexually motivated acts of exposure can be unlawful under the disorderly conduct statute, that does

---

peace or health, or which openly outrages the public decency and is injurious to public morals, upon conviction, shall be punished by imprisonment in the county jail for not less than one month nor more than six months, or by fine not less than $50 nor more than $200."

[4] *ORS 166.025(1) provides:*

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior; or

"(b) Makes unreasonable noise; or

"(c) Disturbs any lawful assembly or persons without lawful authority; or

"(d) Obstructs vehicular or pedestrian traffic on a public way; or

"(e) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disburse; or

"(f) Initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or

"(g) Created a hazardous or physically offensive condition by any act which the person is not licensed or privileged to do."

not suggest that the legislature intended to permit the prohibition of accidental or negligent public exposure. That behavior would not be unlawful under ORS 166.025(1), unless the person committed the crime with the intent to cause public inconvenience, annoyance or alarm or "recklessly created a risk thereof." The commentary demonstrates that, by requiring the intent to cause public inconvenience, the Criminal Law Revision Commission intended to avoid a strict liability offense like the one under the city's ordinance. *See Commentary to Proposed Oregon Criminal Code* 214, Final Draft and Report, § 220 (July, 1970); *see also* Minutes, Senate Criminal Law and Procedure Committee, March 16, 1971, p 2.

Because both statutes on which the city relies contain scienter elements and the ordinance prohibits exposure regardless of the actor's mental state, it prohibits what the state legislature intended to permit. The ordinance is preempted, and the trial court properly allowed the demurrer.

Affirmed.

**WARREN, J.,** dissenting.

I dissent. The majority is correct that *LaGrande/Astoria v. PERB*, 281 Or 137, 576 P2d 1204, *on rehearing*, 284 Or 173, 586 P2d 765 (1978), *Portland v. Dollarhide*, 300 Or 490, 714 P2d 220 (1986), and *Portland v. Lodi*, 308 Or 468, 782 P2d 415 (1989), are hardly models of consistency and clarity. However, since *Lodi*, this court has twice analyzed state preemption law and has by now developed a coherent, workable standard that is consistent with precedent: *State v. Long*, 106 Or App 389, 807 P2d 815 (1991); *Denton Plastics, Inc. v. City of Portland*, 105 Or App 302, 804 P2d 1199 (1990) (*Denton/Long*). Nevertheless, the majority opts to heave the proverbial baby out with the bath water by unnecessarily abandoning *Denton/Long*.

Both today's majority and *Denton/Long* see preemption analysis as involving a two-part test and both rely on the same language in *Dollarhide*:

"The essential test for displacement of local ordinances (civil or criminal) by state law is whether the local rule is 'incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive.' * * * In the area of civil or administrative

ordinances regulating local conditions, it is reasonable to assume that the legislature did not mean to displace local ordinances, unless that intention is apparent. * * * The reservation in Article XI, section 2, however, reverses this assumption with respect to criminal law.

"The analysis of compatibility begins then with the assumption that state *criminal* law displaces conflicting local ordinances which prohibit and punish the same conduct, absent an apparent legislative intent to the contrary." 300 Or at 501. (Emphasis in original; citations omitted.)

Under the majority's analysis, the inquiry is, first, whether the laws conflict or the ordinance cannot operate concurrently with a statute; and if it cannot, second, is the ordinance otherwise preempted because the legislature intended its law to be exclusive? 111 Or App at 243. Under *Denton/Long*, the test is, first, does the ordinance conflict with state law; and if it does, second, did the legislature intend to permit the potential conflict?

The main difference between *Denton/Long* and today's decision is one of emphasis. Essentially, both standards begin by determining whether an ordinance conflicts with a statute.[1] However, the majority ignores the key to preemption analysis in Oregon: The "assumption" of preemption for criminal ordinances created by the reservation in Article XI, section 2. That is why the second step in the *Denton/Long* analysis deals with the "assumption" of legislative intent.

The majority is probably correct that the phrase "rebuttable presumption" is an unfortunate choice of words; nevertheless, that is the term we are left with. Under *Dollarhide*, we are to "assume" that the legislature did not intend to preempt (or "displace") local civil or administrative ordinances, unless the legislature expressed an intention to the contrary. If the ordinance is criminal, however, then the "assumption" is "reversed." Despite the majority's assertion that determination of legislative intent is a question of law,

---

[1] In *Denton/Long*, we saw the question of whether the legislature intended its law to be exclusive as part and parcel of the first question: Do the laws conflict? If the legislature intended its law to bar municipalities from local regulation in a given area, then any action a municipality took in that area would necessarily conflict with state law.

and not a "matter of presumptions, burdens of proof or weighing of evidence," that is exactly the situation we are left with after *Lodi*:

> "In theory, what the legislature 'permits' can range from express permissive terms to total inattention and indifference to a subject. *The search is* not for particular words but *for a political decision, for what the state's lawmakers either did or considered and chose not to do.* The search for a negative decision \* \* \* can involve variations ranging from mere inaction on a bill \* \* \* to rejection of a proposal by vote after a debate \* \* \*." *Portland v. Lodi, supra,* 308 Or at 474. (Footnote omitted.)

Therefore, the question of whether an ordinance is preempted does in fact turn on a rebuttable presumption. We start from the premise that a conflicting civil or administrative ordinance is not preempted by a state statute, unless there is evidence of a legislative intent (*i.e.*, a political decision) to prevent local regulation in that given area. Conversely, if a conflicting ordinance is criminal, then we begin with the presumption that the ordinance is preempted, unless there is evidence of a political decision to allow the potentially inconsistent laws.

In my view, we should adhere to *Denton/Long*. Under that standard, the threshold question is whether the municipal ordinance conflicts with state law. If the laws do not conflict, the ordinance is not preempted. *State v. Long, supra,* 106 Or App at 393, identified two types of conflict in preemption analysis: facial and potential conflict. Facial conflict occurs either when an ordinance contradicts the language of a state statute or when the state statutory scheme displaces local regulation. *City of Portland v. Dollarhide, supra.* If the laws facially conflict, then the ordinance is preempted, because the legislature has made a "political decision" regarding the specific form of government regulation in that area.

Even if there is no facial conflict, the laws may potentially conflict if they are inconsistent in part, but still compatible as a whole. When criminal laws potentially conflict, the presumption is in favor of preemption: An ordinance is preempted, unless the legislature intended to allow municipalities to regulate conduct that is also governed by statute.

There are two questions presented in this appeal: First, whether an ordinance is preempted if it criminalizes conduct not prohibited in a corresponding state statute, but when that same conduct is prohibited in another statute; and, second, whether we can read a state of mind requirement into PCC § 14.24.060.

PCC § 14.24.060 provides, in part:

"It is unlawful for any person to expose his or her genitalia while in a public place or place visible from a public place, if the public place is open or available to persons of the opposite sex."

ORS 163.465 provides, in part:

"(1)  A person commits the crime of public indecency if while in, or in view of, a public place the person performs:

"* * * * *

"(c)  An act of exposing the genitals of the person *with the intent of arousing the sexual desire of the person or another person.*" (Emphasis supplied.)

In applying the *Denton/Long* analysis, we first look to see whether the laws facially conflict. Defendant contends that PCC § 14.24.060 does facially conflict with ORS 163.465, because it criminalizes public exposure without the intent to arouse, which the statute allows.[2] Simply because the statute *does not prohibit* public exposure without the intent to arouse, it does not follow that the statute *allows* such conduct and precludes any local regulation of public exposure. *Portland v. Lodi, supra,* 308 Or at 474, held that, although statutory silence may suggest that the legislature intended to allow conduct not prohibited by the statute, it can equally

---

[2] This is the first time that ORS 163.465 has come before us under a preemption challenge. Previous cases involving it have dealt with defendants exposing themselves in a department store, *State v. Dugger,* 73 Or App 109, 698 P2d 491 (1985), or to passing motorists on Interstate 5, *State v. Daniel,* 98 Or App 695, 780 P2d 784 *rev den* 308 Or 660 (1989), or to neighbors from inside the defendant's own home, *State v. Louis,* 296 Or 57, 672 P2d 708 (1983); or masturbating in public restrooms, *State v. Holt,* 291 Or 343, 630 P2d 854 (1981); *State v. Owczarzak,* 94 Or App 500, 766 P2d 399 (1988); *State v. Casconi,* 94 Or App 457, 766 P2d 397 (1988); urinating on a sidewalk, *State v. Jones,* 103 Or App 123, 796 P2d 670 (1990), *rev den* 311 Or 166 (1991); engaging in a sexual act, *State v. Culmsee,* 91 Or App 63, 754 P2d 11 *rev den* 306 Or 414 (1988); and nude dancing. *State v. Brooks, et al,* 275 Or 171, 550 P2d 440 (1976). None of the cases dealt with the "intent" element of the statute, because the defendants' intent to arouse was not at issue on appeal.

suggest that the legislature determined that further regulation is properly left within the power of a municipality. Statutory silence alone cannot create a facial conflict with a municipal ordinance. The laws here do not facially conflict, so the ordinance is not automatically preempted.

The next question is whether the laws potentially conflict. As in *State v. Long, supra,* there is a potential conflict in that the laws regulate the same subject, but there are differences in the elements of the offenses. Under *Denton/Long,* this type of conflict is not necessarily fatal to the ordinance. Because the laws are criminal in nature, there is a rebuttable presumption that the ordinance is preempted, because of the reservation in Article XI, section 2. The presumption is avoided by a criminal ordinance if the legislature intended to allow the potential conflict. *Portland v. Lodi, supra,* 308 Or at 474.

Defendant contends that there is no evidence of a legislative intent to allow an inconsistency. The city disagrees, arguing that, although public nudity without an intent to arouse is not prohibited as "public indecency," the legislature prohibited that type of nudity under "disorderly conduct." There is support for city's position. The legislature did not intend ORS 163.465 to operate as the exclusive prohibition of public nudity. For example, some public exposure would not rise to the level of public indecency, but would still be punishable as disorderly conduct. ORS 166.025.[3] Moreover, the legislature only intended to exclude from criminal prosecution mere negligent or accidental exposures — not all exposures without a specific intent to arouse.[4]

---

[3] The Criminal Law Revision Commission, *Oregon Criminal Code of 1971,* for Senate Bill 40 stated in its summary of "indecent exposure" that "[p]aragraph (c) [the section at issue in this case] requires an intent to arouse the sexual desire of the actor or another. An exposure that is not sexually motivated would not violate this section, but might under the certain circumstances be 'disorderly conduct' " under the state statute. *Reprinted in Proposed Oregon Criminal Code, Final Draft and Report,* § 120, Public Indecency, at p 129 (July, 1970).

[4] The legislative commentary to ORS 163.465 reads:

"Indecent or lewd exposure of the person to the public view is a common law misdemeanor and it has been made a specific offense under many state statutes.

"Subsections (1) and (2) proscribe the performance of certain sexual activity in a public place. *There is no mens rea requirement* here; the commission of the act in public *for whatever reason* constitutes the offense.

That addresses the first question in this case: An ordinance is not preempted if it criminalizes conduct not prohibited in a corresponding state statute, if the same conduct is prohibited in another statute. Therefore, PCC § 14.24.060 is not preempted by ORS 163.465, because the legislature also prohibits public exposures that recklessly create the risk of public inconvenience, annoyance or alarm by ORS 166.025. However, ORS 166.025 would preempt PCC § 14.24.060 *if* the latter punishes a negligent or accidental public exposure, because the city would then punish behavior that the state allows.

Our previous cases have sufficiently limited the reach of PCC § 14.24.060 to allow us to imply a requirement of at least a "reckless" intent. In *City of Portland v. Gatewood*, 76 Or App 74, 708 P2d 615 (1985), *rev den* 300 Or 477 (1986), the defendant challenged PCC § 14.24.060 as overbroad, thereby violating Article I, section 8, of the Oregon Constitution. The defendant contended that the ordinance also encompassed permitted behavior, *i.e.*, protected expression. Relying on *State v. Jackson*, 224 Or 337, 356 P2d 495 (1960), *overruled on other grounds*, *State v. Henry*, 302 Or 510, 732 P2d 9 (1987), we rejected the argument, recognizing our duty to interpret a constitutionally challenged statute in a manner that will sustain its validity, if possible. We concluded that PCC § 14.24.060 is intended to reach only non-protected public exposure and is to be interpreted and enforced accordingly. *City of Portland v. Gatewood, supra,* 76 Or App at 81. The ordinance is not overbroad, because it regulates conduct that the Portland City Council has determined to be injurious to health, safety and morals, *i.e.*, public indecent exposure not intended as a protected symbolic or communicative act. 76 Or App at 82. Consequently, I would hold that PCC § 14.24.060 does not condemn purely accidental or negligent exposures. The ordinance requires at least recklessness by the actor.

---

"Subsection (3) requires an intent to arouse the sexual desire of the actor or another. *An accidental or negligent exposure would not violate this section.*" (Emphasis supplied.)

*Oregon Criminal Code 1972, Preliminary and Tentative Drafts*, Art. 13, "Sexual Offenses," Tentative Draft No. 1 at p 70 (Feb 1970), *reported by* Criminal Law Revision Comm., Subcomm. No. 2.

The majority suggests that local criminal ordinances are preempted unless they are virtually identical with a state statute. I disagree. The issue in preemption analysis is whether the legislature decided not to prohibit local regulation of certain conduct. Ordinances often complement a field not exclusively occupied by state law. *See State v. Long, supra,* 106 Or App at 393. The authority of a municipality to enact reasonable legislation to regulate conduct that is thought to be detrimental to the public's health, safety and morals is indisputable. *City of Portland v. Gatewood, supra,* 76 Or App at 79.

PCC § 14.24.060 is not preempted by ORS 163.465, because the legislature intended only to preclude criminal prosecutions of negligent or accidental exposures, not to preclude local regulation of public nudity.

I dissent.

Joseph, Rossman and Durham, JJ., join in this dissenting opinion.