Argued and submitted May 11, reversed October 14, reconsideration denied
December 16, 1992, petition for review pending 1993

# CITY OF EUGENE,
*Respondent,*

*v.*

# KATHY KAY KRUK,
*Appellant.*

(91-50006; CA A71272)

839 P2d 250

Edmund J. Spinney, Eugene, argued the cause and filed the brief for appellant.

Jens Schmidt, Eugene, argued the cause for respondent. With him on the brief were Floyd F. Prozanski, Jr. and Harrang Long Watkinson Arnold & Laird, P.C., Eugene.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

WARREN, P. J.

Edmonds, J., dissenting.

## WARREN, P. J.

Defendant appeals her conviction under Eugene Municipal Code § 4.907 (EC § 4.907) for "Interferring [*sic*] with a Police Officer." She contends that the trial court erred in overruling her demurrer, because the municipal ordinance is preempted by state law. We agree and reverse.[1]

One morning in September, 1990, at about 3:00 a.m., defendant and her extended family were awakened by a commotion on the front lawn. Defendant's brother, Romeo, who occasionally stayed at defendant's home, was yelling at Officer Dragt and pointing his finger at the officer's face. Both Romeo and Dragt were standing in a gravel area outside a fence in front of the house. Another officer, Schulke, heard Dragt tell Romeo that he was under arrest for failure to present his driver's license. Romeo became agitated and resisted the officers' attempt to handcuff him. Other officers arrived to assist, and they decided to put Romeo on the ground. Schulke held onto Romeo's hair as he was pulled down.

After Romeo was on the ground but, before he was handcuffed, Schulke heard defendant's voice coming from the porch. He looked up and saw defendant running toward Romeo and the police. He let go of Romeo and got up to intercept defendant. Schulke ordered defendant to stay back, but she refused. He testified that defendant came within a foot of the fence, which put her 4 to 5 feet away from where Romeo was being arrested. Schulke shined his flashlight on defendant and continued to order her away. She refused and began yelling about Romeo's back. Approximately 10 years before, Romeo had been involved in a serious accident and had metal rods surgically implanted in his back. Although he is able to walk, his gait is noticeably affected by his disability, and he has no sensation in his lower extremities. Defendant testified that, when other officers arrived, 4 of them knelt on Romeo's back to control him. She was afraid that the rods in Romeo's back would break and leave him paralyzed.

Defendant also complained about Schulke's flashlight shining in her eyes, but he refused to lower it. Defendant

---

[1] In the light of our holding, we need not reach defendant's other assignments of error.

reached out and grabbed the flashlight and pulled it toward her. Schulke pulled the flashlight away, grabbed defendant's arm and stepped over the fence with Officer McKee to arrest defendant. Schulke testified that defendant's actions prevented him from assisting with Romeo's arrest.

Defendant's first assignment of error is that the court improperly overruled her demurrer. She contends that the ordinance is preempted by ORS 162.315.[2]

EC § 4.907 provides:

"It shall be unlawful for any person, intentionally or with reckless disregard thereof, to interfere with a police officer in the officer's lawful performance of his or her duties. To interfere with as used in this section shall mean *any physical act, including a refusal to leave* a particular area in response to a lawful order from a police officer, that prevents or could *reasonably be expected* to prevent a police officer from performing his or her duties." (Emphasis supplied.)

ORS 162.315 provides:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer in making an arrest.

"(2) 'Resists,' as used in this section, means the use or threatened use of *violence, physical force or any other means that creates a substantial risk of physical injury* to any person and includes behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to the arresting officer. *Passive resistance does not constitute behavior intended to prevent being taken into custody.*

"(3) It is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest, provided the peace officer was acting under color of official authority." (Emphasis supplied.)

---

[2] Defendant also contends that obstructing governmental or judicial administration, ORS 162.235, also preempts EC § 4.907. However, ORS 162.235(2) provides:

"This section shall not apply to the obstruction of unlawful governmental or judicial action or *interference with the making of an arrest.*" (Emphasis supplied.)

That statute does not apply, because this case involves interference with an officer making an arrest.

This court has revisited the issue of preemption several times, wrestling with the footnote in *LaGrande/Astoria v. PERB*, 281 Or 137, 148 n 18, 576 P2d 1204 (1978), *on rehearing*, 284 Or 173, 586 P2d 765 (1978), that "explained" how the reservation in Article XI, section 2, of the Oregon Constitution reversed the "assumption of preemption" for criminal laws. There is no need to repeat that here.[3] In *City of Portland v. Jackson*, 111 Or App 233, 826 P2d 37, *rev allowed* 313 Or 354 (1992), we said:

> "[T]he test for [whether laws conflict or are incapable of concurrent operation] is whether an ordinance permits or prohibits what a statute treats in the opposite way. If the answer is yes, the ordinance is preempted, unless there is a clear statutory intent to the contrary. If the answer is no, the question remains whether the legislature intended its law to be exclusive in the area. * * * [That question] turns on legislative intent, which is to be discerned from the usual sources, subject to the 'assumption' of a preemptive intent." 111 Or App at 242.

The first step is to determine whether EC § 4.907 prohibits actions that ORS 162.315 allows. We note, first, that EC § 4.907 and ORS 162.315 involve different mental states. The statute requires that a defendant act "intentionally," the ordinance merely requires "reckless disregard." Ostensibly, someone whose reckless disregard creates a substantial risk of physical injury to another while a police officer is trying to arrest someone else would violate EC § 4.907, but would not violate ORS 162.315 because his actions were not intentional. City concedes, and the trial court ruled, that the "reckless disregard" language in the ordinance is unconstitutional. Nevertheless, City contends that

---

[3] This is the relevant chronology: *LaGrande/Astoria v. PERB, supra*; *City of Portland v. Dollarhide*, 300 Or 490, 714 P2d 220 (1986); *City of Portland v. Lodi*, 308 Or 468, 782 P2d 415 (1989); *Denton Plastics, Inc. v. City of Portland*, 105 Or App 302, 804 P2d 1199 (1991); *State v. Long*, 106 Or App 389, 807 P2d 815, *clarified* 107 Or App 284, 804 P2d 1199 (1991); *City of Dallas v. Sullenger*, 111 Or App 226, 826 P2d 34 (1992); *City of Portland v. Jackson*, 111 Or App 233, 826 P2d 37, *rev allowed* 313 Or 354 (1992); *State v. Lopez-Vega*, 111 Or App 252, 826 P2d 48 (1992). The Supreme Court has granted review in *Jackson* to answer the question raised by the Chief Judge of this court in 1984 in his concurring opinion in *City of Portland v. Dollarhide*, 71 Or App 289, 298, 691 P2d 162 (1984):

> "If [*LaGrande/Astoria* holds] that a city ordinance making punishable conduct also made punishable by state law is presumed to be beyond a city's home rule powers, the sooner everyone knows the better."

defendant's citation validly charged a crime because she was charged with "intentional" conduct, and that this court cannot review provisions of an ordinance that a city has not attempted to enforce against a defendant. *City of Portland v. Welch*, 229 Or 308, 313, 364 P2d 1009 (1961). We need not reach the question, because there is a more serious problem with the ordinance.

ORS 162.315 criminalizes physical force that creates a substantial risk of physical injury. EC § 4.907, on the other hand, expressly criminalizes *any* physical act, including a refusal to leave. The legislature expressly excluded "passive resistance" from the scope of ORS 162.315, but it is within the reach of EC § 4.907. Therefore, the ordinance prohibits what the statute allows and is preempted.

City argues that EC § 4.910, which is identical to ORS 162.315, must be read *in pari materia* with EC § 4.907. City contends that EC § 4.907 should be interpreted to require proof of "violence, physical force or any other means that creates a substantial risk of physical injury to any person," if the conduct in question interferes with an officer making an arrest, relying on *City of Dallas v. Sullenger*, 111 Or App 226, 826 P2d 34 (1992). We reject the argument. The ordinance and the statute in *Sullenger* criminalized the same conduct. The only difference between them was that the ordinance prohibited interference with police activity *per se*, while the statute prohibited conduct that was "intentional and directed towards the obstruction of governmental administration." *City of Dallas v. Sullenger, supra*, 111 Or App at 229. We compared the challenged ordinance with another similar ordinance that, like the statute, required intentional conduct.

It is one thing to elevate an ordinance's required culpable mental state to prevent it from conflicting with a state statute. It is an altogether different thing to use rules of statutory construction to rewrite specifically contradictory clauses in an ordinance. We conclude that the ordinance prohibits what the statute permits. Therefore, the ordinance is preempted.[4]

---

[4] Because the ordinance at issue in this case either conflicts or cannot cooperate concurrently with a state statute, it is preempted, unless there is clear statutory

Reversed.

**EDMONDS, J.,** dissenting.

The majority holds that EC § 4.907 is preempted by ORS 162.315, because the ordinance prohibits conduct that the statute permits. In determining whether preemption occurs, there are two questions to be asked: First, can the statute and the ordinance operate concurrently, *i.e.*, does the ordinance permit what the statute forbids or *vice versa*; and, second, did the legislature intend the state law to be the exclusive source of regulation? *City of Portland v. Jackson*, 111 Or App 233, 241, 826 P2d 37, *rev allowed* 313 Or 354 (1992). Because EC § 4.907 and ORS 162.315 *can* operate concurrently and there is no suggestion that the legislature meant the statute to be exclusive, I disagree with the majority.

ORS 162.315 makes resistance to arrest by a police officer unlawful. In the context of the statute, "resist" means:

"[T]he use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person and includes behavior clearly intended to prevent being taken into custody by overcoming the actions of the arresting officer. The behavior does not have to result in actual physical injury to the arresting officer. *Passive resistance does not constitute behavior intended to prevent being taken into custody.*" ORS 162.315(2). (Emphasis supplied.)

EC § 4.907 makes it unlawful for a person to interfere with a police officer in the officer's lawful performance of duty. In the context of the ordinance, "interfere" means

"any physical act, *including a refusal to leave a particular area in response to a lawful order from a police officer*, that prevents or could reasonably be expected to prevent a police officer from performing his or her duties." EC § 4.907. (Emphasis supplied.)

The majority says that "[t]he legislature expressly excluded 'passive resistance' from the scope of ORS 162.315, but it is within the reach of EC § 4.907. Therefore, the

intent to the contrary. *See City of Portland v. Jackson, supra*, 111 Or App at 242. The parties do not show, nor are we able to find, any such statutory intent.

ordinance prohibits what the statute allows and is pre-empted." 115 Or App at 499. If, according to the majority, the conflict between the ordinance and the statute is that, under the ordinance, passive resistance is criminalized while, under the statute, that conduct is not criminalized, the majority is incorrect. The statute and the ordinance are directed toward different kinds of conduct and can operate concurrently. The statute addresses only conduct that follows an attempt to arrest a person. The fact that the statute permits passive resistance in that context does not mean that passive resistance in response to police action is decriminalized in all instances.

In the instant case, defendant was a bystander who was arrested because she grabbed the officer's flashlight and refused a lawful order to leave the area. Before she was arrested, she had been warning the officers about Romeo's back condition. She was behind a fence 4 to 5 feet away from where he was being arrested. Because defendant was not resisting her own arrest and was not resisting the arrest of Romeo, the provisions of ORS 162.315, which permit passive resistance, do not apply to her. That defendant may have passively resisted the order to leave the area is irrelevant to a determination of whether the ordinance and the statute conflict, because that behavior is not regulated by the resisting arrest statute.

As to whether the legislature intended the resisting arrest statute to be the exclusive source of regulation, there is no legislative history to indicate that.[1]

I dissent.

---

[1] Under *City of Portland v. Jackson,* 111 Or App 233, 242, 826 P2d 37, *rev allowed* 313 Or 354 (1992), the answer to the first preemption question determines the analysis to be applied to the second. If that answer is yes, the ordinance is preempted, unless there is a clear statutory intent to the contrary. If that answer is no, the question remains whether the legislature intended its law to be exclusive.