Argued and submitted November 14, 1988, affirmed January 11, reconsideration denied April 21, petition for review allowed May 31, 1989 (308 Or 79)

CITY OF PORTLAND,
*Appellant,*

*v.*

LODI,
*Respondent.*

CITY OF PORTLAND,
*Appellant,*

*v.*

WROTEN,
*Respondent.*

(DA 360332, 363890; CA A47872 (Control), A48372)
(Cases Consolidated)

767 P2d 108

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Garrett Richardson, Portland, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge pro tempore, and Graber and Riggs, Judges.

RIGGS, J.

## RIGGS, J.

This is a consolidated appeal by the City of Portland from pretrial judgments dismissing complaints in two cases. We affirm.

The city alleged that defendants Lodi and Wroten were carrying pocket knives with blades longer than three and one-half inches and charged them with carrying concealed weapons in violation of City of Portland Code § 14.32.100.[1] Defendants demurred, and the trial courts dismissed the complaints. The questions presented are whether the city ordinance is in conflict with the state statute that prohibits the carrying of concealed weapons, ORS 166.240,[2] and is thereby preempted and, if not, whether the city ordinance is in violation of the right to bear arms protected by Article I, section 27, of the Oregon Constitution.

■ The law on preemption of city ordinances by state criminal law is well established. Cities are empowered under home rule to enact ordinances that punish the same conduct that is punished by state criminal law. *City of Portland v. Dollarhide,* 300 Or 490, 498-99, 714 P2d 220 (1986). The limitation on their power is that ordinances cannot conflict or be incompatible with state statutes. The analysis of compatibility begins with the assumption that state criminal law displaces conflicting local ordinances that prohibit and punish the same conduct, if there is no discernible legislative intent to

---

[1] Section 14.32.100 provides:

"(a) It is unlawful for any person, not authorized by law, to carry any dangerous or deadly weapon in a concealed manner.

"(b) As used in this Chapter, 'dangerous or deadly weapon' includes a firearm, metal knuckles, straight razor, weapon of the type commonly known as nunchaku, black jack, sap, or sap glove, and any type of knife other than an ordinary pocketknife with a blade not longer than three and 3-1/2 inches. When carried with intent to use the same unlawfully against another, 'dangerous or deadly weapon' also includes any instrument or device capable of inflicting injury to the person or property of another."

[2] ORS 166.240(1)provides:

"(1) Except as provided in ORS 166.260, 166.290 and subsection (2) of this section, any person who carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force and commonly known as a switchblade knife, any dirk, dagger, ice pick, slung shot, metal knuckles, or any similar instrument by the use of which injury could be inflicted upon the person or property of any other person, commits a Class B misdemeanor."

the contrary. A city ordinance can punish the same conduct as a state statute, but it cannot prohibit an act that the statute permits or permit an act which the statute prohibits. *City of Portland v. Dollarhide, supra,* 300 Or at 501-502; *Winters v. Bisaillon,* 152 Or 578, 54 P2d 1169 (1936). "[I]n order that the defining elements of a city's crime not conflict with state law, they must virtually 'duplicate' the state law elements." *City of Portland v. Dollarhide, supra,* 300 Or at 501-02.

■ The city ordinance became effective on November 7, 1974. It substantially duplicated the state statutes that regulated the carrying of concealed weapons, primarily *former* ORS 166.240, which provided an exception for pocketknives, and the blade length provision in *former* ORS 166.220 that any knife with a blade longer than three and one-half inches was a dangerous weapon when carried concealed with the intent to use unlawfully against another person.[3] The statutes were amended in 1975, 1977 and 1985. The subsection of ORS 166.220 on blade length was deleted. ORS 166.240 was amended so that it gave a detailed definition of a "switchblade knife" and deleted the pocketknife exemption.

The amendments, in particular the changes to ORS 166.240, were made partly in response to appellate court opinions that found some of the phrases in the statutes unconstitutional. We held in *State v. Harris,* 40 Or App 317, 594 P2d 1318 (1979), that the word "ordinary" was too vague, and effectively deleted it from the statute, leaving a simple "pocketknife" exception. Then, the Supreme Court held in *State v. Delgado,* 298 Or 395, 692 P2d 610 (1984) that the right to possess pocketknives is protected under the state constitution and that a switchblade knife is a type of pocketknife. The court noted that the legislature could regulate the possession and use of constitutionally protected arms, particularly those that it had recognized as especially dangerous, such as switchblades. *See State v. Ramer,* 65 Or App 480, 671 P2d 723 (1983). After *Delgado,* the legislature removed the broad "pocketknife" exception from the statute and left only the list of knives and other weapons identified to be those that "are designed and intended primarily as weapons to inflict bodily injury or death." *See State v. Pruett,* 37 Or App 183, 188, 586

---

[3] We need not address the question of whether the ordinance was compatible with the state statutes when it was enacted in 1974.

P2d 800 (1978); *see also State v. Tucker,* 28 Or App 29, 33, 558 P2d 1244, *rev den* 277 Or 491 (1977).[4]

In a special concurrence, Judge Joseph stated in *State v. Pruett:* "The legislature is capable of clearly stating the scope of a prohibition against knives whose design creates unreasonable chances of unlawful use." 37 Or App at 188. In contrast to those weapons are items such as pocketknives that are normally carried for benign purposes. *State v. Pruett, supra,* 37 Or App at 187-88.[5] Oregon appellate courts have consistently recognized that the policy behind the regulation of the possession of weapons has been to preserve, to the greatest extent possible, the constitutional right to bear arms. *State v. Delgado, supra; State v. Blocker,* 291 Or 255, 630 P2d 824 (1981); *State v. Kessler,* 289 Or 359, 614 P2d 94 (1980); *State v. Harris, supra; State v. Pruett, supra; State v. Tucker, supra.*

ORS 166.240 only prohibits carrying concealed certain types of knives. The statutory policy has been to preserve broadly the right to bear arms, while narrowly limiting the right to carry knives. Thus the Portland ordinance prohibits an act that the statute permits, the carrying of any concealed knife whose blade is longer than three and one-half inches. The ordinance and the statute are not compatible; the ordinance is preempted.

Because we base our decision on the preemption issue, we need not address the constitutionality of the ordinance.

Affirmed.

---

[4] Knives and weapons that are not prohibited by ORS 166.240 may be covered by ORS 166.220, which prohibits the carrying of a dangerous or deadly weapon with the intent to use it unlawfully against another or attempting to use it unlawfully. *See generally, State v. Delgado, supra,* 298 Or at 400. Firearms were moved from ORS 166.220 and ORS 166.240 to a subsection of ORS 166.250 dealing solely with unlawful possession of firearms.

[5] The city conceded at oral argument that as the ordinance stands, a picnicker in a Portland park would be violating the ordinance if he had a closed basket of food and it contained a table knife that had a three and one-half inch blade.