Argued and submitted July 5, the decision of the Court of Appeals and the judgment of the circuit court affirmed November 16, 1989

CITY OF PORTLAND,
*Petitioner on Review,*

*v.*

LODI,
*Respondent on Review.*

(DA 360332; CA A47872 (Control))

CITY OF PORTLAND,
*Petitioner on Review,*

*v.*

WROTEN,
*Respondent on Review.*

(DA 363890; CA A48372)
(SC S36030)
(Cases Consolidated)

782 P2d 415

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the

petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Garrett A. Richardson, Portland, argued the cause and filed a response brief for respondents on review.

Milo R. Mecham, of Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene, filed an *amicus curiae* brief on behalf of League of Oregon Cities.

Thomas R. Williams, Senior Deputy City Attorney, Portland, filed an *amici curiae* brief on behalf of the cities of Beaverton, Corvallis, Hillsboro, Portland, and Salem. With him on the brief was Jeffrey L. Rogers, City Attorney, Portland.

LINDE, J.

## LINDE, J.

The Court of Appeals invalidated the City of Portland's penal ordinance against carrying a concealed pocketknife with a blade beyond a specified length[1] on grounds that the ordinance was preempted by state law, affirming the circuit court's dismissal of complaints against defendants under the ordinance. *City of Portland v. Lodi*, 94 Or App 735, 767 P2d 108 (1989). Having granted the City's petition for review, we affirm the decision of the Court of Appeals.

The preemption issue arises under Article XI, section 2, of the Oregon Constitution, which authorizes the voters of a city to enact and amend the city's charter "subject to the Constitution and criminal laws of the State of Oregon." The background of the quoted phrase and its judicial interpretation were reviewed in *City of Portland v. Dollarhide*, 300 Or 490, 714 P2d 220 (1986). That decision involved a penal ordinance which prohibited prostitution in terms essentially identical to the state's criminal code but, unlike the state law, imposed mandatory minimum penalties. This court held that the primacy of the state's criminal law over city penal ordinances forbade the city not only to extend the reach of an offense but also to increase the penalties for a substantively identical offense without a showing of legislative consent to such an extension.

Following a quotation from *LaGrande/Astoria v. PERB*, 281 Or 137, 148-49 & n 18, 576 P2d 1204, *adhered to on rehearing*, 284 Or 173, 586 P2d 765 (1978), *Dollarhide* summarized:

---

[1] The ordinance, section 14.32.100 of the City of Portland Code, provides:

"(a) It is unlawful for any person, not authorized by law, to carry any dangerous or deadly weapon in a concealed manner.

"(b) As used in this Chapter, 'dangerous or deadly weapon' includes a firearm, metal knuckles, straight razor, weapon of the type commonly known as nunchaku, black jack, sap, or sap glove, and any type of knife other than an ordinary pocketknife with a blade not longer than three and 3-1/2 inches. When carried with intent to use the same unlawfully against another, 'dangerous or deadly weapon' also includes any instrument or device capable of inflicting injury to the person or property of another."

It may be generous to say that the ordinance specifies the permissible length when it refers to "a blade not longer than three and 3-1/2 inches," but the parties appear in agreement that this means three and one-half inches.

"The essential test for displacement of local ordinances (civil or criminal) by state law is whether the local rule is 'incompatible with the legislative policy, either because both cannot operate concurrently or because the legislature meant its law to be exclusive.' 281 Or at 148. In the area of civil or administrative ordinances regulating local conditions, it is reasonable to assume that the legislature did not mean to displace local ordinances, unless that intention is apparent. *See, e.g., State ex rel Haley v. City of Troutdale,* 281 Or 203, 576 P2d 1238 (1978) (finding no manifest legislative intent to exclude local provisions which 'supplemented' the state building code). The reservation in Article XI, section 2, however, reverses this assumption with respect to state criminal law.

"The analysis of compatibility begins then with the assumption that state *criminal* law displaces conflicting local ordinances which prohibit and punish the same conduct, absent an apparent legislative intent to the contrary. The parties have cited nothing in the text or legislative history of the state laws regarding prostitution, nor have we found anything, to indicate that the state intended cities to be authorized to enact inconsistent local laws in this area."

300 Or at 501 (emphasis in original).

The Court of Appeals accordingly examined the criminal statutes against carrying concealed weapons. When the Portland ordinance was enacted in 1974, *former* ORS 166.220, a felony statute directed at unlawful attempted use or intent to use a weapon against a person, penalized carrying numerous listed objects including a "dangerous knife" and generically "any other dangerous or deadly weapon or instrument," concealed or not; and it specified that for this prohibition a concealed knife with a blade longer than three and one-half inches was a dangerous weapon. *Former* ORS 166.240(1), a misdemeanor section which did not require that a defendant intend unlawful use, included knives in its proscription of concealed weapons but excepted an "ordinary pocketknife." The Portland ordinance took the length limitation from the felony statute dealing with intended unlawful use against a person and made it part of its prohibition against simple concealed possession.

In 1974, therefore, the question might have been whether a pocketknife blade restricted by the ordinance was permitted as an "ordinary pocketknife" under *former* ORS

166.240(1). But the Legislative Assembly later revised the statutes after court decisions found constitutional flaws in their former texts. As amended in 1985, ORS 166.220 now omits any list of dangerous or deadly weapons or instruments, instead incorporating by reference the criminal code's general definitions of these terms in ORS 161.015(1) and (2):

> " 'Dangerous weapon' means any instrument, article or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.

> " 'Deadly weapon' means any instrument, article or substance specifically designed for and presently capable of causing death or serious physical injury."

The prohibition of carrying concealed weapons without reference to any intended unlawful use was divided between firearms, now a Class A misdemeanor under ORS 166.250(1), and sharp or blunt instruments, a Class B misdemeanor under ORS 166.240(1). The latter section now provides:

> "Except as provided in ORS 166.260, 166.290 and subsection (2) of this section, any person who carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force and commonly known as a switchblade knife, any dirk, dagger, ice pick, slung shot, metal knuckles, or any similar instrument by the use of which injury could be inflicted upon the person or property of any other person, commits a Class B misdemeanor."

The question, then, is whether the removal of reference to knives other than switchblade knives from ORS 166.240(1) preempted the City's penal ordinance against concealed carrying of other knives.

The City focuses on two statements by the Court of Appeals. It argues that the court erred in attributing to the legislature's regulation of the possession of a weapon a general policy "to preserve, to the greatest extent possible, the constitutional right to bear arms." 94 Or App at 739. The phrase "greatest extent possible" may have been thoughtless, because it would be possible not to adopt any regulations at all. It is appropriate to credit legislators with sensitivity to constitutional guarantees, *see Carden v. Johnson,* 282 Or 169, 177, 577

P2d 513 (1978); however, under Article XI, section 2, a "policy" preempts local ordinances only if it expressly or impliedly is adopted as part of the state's law.

The City further objects to the Court of Appeals' conclusion that the statute permits the carrying of the kind of concealed knife that the ordinance prohibits. The Court of Appeals drew from *Dollarhide,* 300 Or at 502, the proposition that a city "cannot prohibit an act that the statute permits," 94 Or App at 738. The City argues that statutory silence should not be construed as "permission."

The word "permits" lends itself to this argument, but the preemption issue is the same without the word. In theory, what the legislature "permits" can range from express permissive terms to total inattention and indifference to a subject. The search is not for particular words but for a political decision, for what the state's lawmakers either did or considered and chose not to do.[2] The search for a negative decision, in the context of preemption, can involve variations ranging from mere inaction on a bill or other proposal, which hardly represents a collective judgment, to rejection of a proposal by vote after debate (perhaps even after passage by one house), which may be a collective decision although it also falls short of affirmative lawmaking. In this instance the legislature did enact the 1985 amendments, and the question is resolved by legislative history.

The amendments were made by House Bill 2384. The House judiciary subcommittee working on the bill considered and discussed the whole question whether to list specified objects in the amended statutes. The treatment of knives was the main focus of discussion. The committee followed the recommendation of the Oregon District Attorneys Association (ODAA) that the section directed against intended unlawful use omit any listing of specified dangerous weapons

---

[2] Language quoted from American Jurisprudence in *Terry v. City of Portland,* 204 Or 478, 269 P2d 544 (1954), *diss'd* 348 US 979 (1955), which would require express legislative words, is too strong given the assumption stated in *Dollarhide* that state criminal law displaces local penal ordinances "absent an apparent legislative intent to the contrary." Of course, local governments may find other, nonpenal means to accomplish their desired local regulations. *See* Platt, *An Odd Couple: The Criminal Sanction and the Municipal Ordinance,* 7 Will L J 43 (1971).

or instruments and instead incorporate the criminal code's general definitions of dangerous or deadly weapons.

With respect to ORS 166.240(1), the section stating what may not be carried concealed regardless of intended use, the bill as introduced listed "any knife other than a pocketknife" along with any switchblade knife, dirk and dagger among cutting or stabbing instruments, ending with a catchall reference to any other injurious instrument. The subcommittee amended the bill by removing all reference to knives other than dirks and daggers and those that it defined as switchblade knives. This was done after the director of ODAA proposed additional changes, which would have had the section specify knives "having a fixed blade longer than three and a half inches" as well as switchblade knives. The implication is that the committee made a decision not to outlaw the concealed carrying of any knife that was not a switchblade, dirk, or dagger. We do not believe that after this decision to omit other knives, the committee nevertheless meant to prohibit carrying an ordinary knife by the final catchall phrase.

HB 2384 was enacted as amended to exclude reference to carrying a concealed knife in the absence of any intended unlawful use against a person. We agree with the Court of Appeals that this constitutes a legislative decision concerning the criminal law of the State of Oregon which, under Article XI, section 2, displaces the City's penal ordinance.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.