Argued and submitted August 28, conviction for carrying a concealed weapon
reversed; otherwise affirmed December 27, 2000

STATE OF OREGON,
*Respondent,*

*v.*

MARK JONATHAN McJUNKINS,
*Appellant.*

(98CR0822FE; CA A104876)

15 P3d 1010

Irene B. Taylor, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Ann Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,[*] and Brewer, Judge.

LANDAU, P. J.

---

[*] Deits, C. J., *vice* Warren, S. J.

## LANDAU, P. J.

Defendant was convicted of possession of a controlled substance, giving false information to a police officer, and carrying a concealed weapon, specifically, a "dirk or dagger." ORS 166.240. His single assignment of error is that the trial court should have granted a motion for judgment of acquittal on the concealed weapon charge, because there was no evidence that the weapon that he possessed was a "dirk or dagger." We agree and reverse the concealed weapon conviction, but otherwise affirm.

The relevant facts are not in dispute. Two officers saw defendant walking down the street at approximately 1:00 a.m. They stopped to talk to him and asked if he had any weapons. Defendant produced a knife, which he had concealed in his coat sleeve.

Defendant was charged with carrying a concealed weapon. The indictment specified that defendant "did unlawfully and knowingly carry concealed upon the defendant's person a *dirk or dagger*, which could be used to inflict injury upon the person or property of another person." (Emphasis added.)

At trial, the only testimony as to the nature of the knife was that of one of the arresting officers, who stated: "It's more or less like a skinning knife, a hunting knife." The knife itself was admitted into evidence. It has a fixed blade and is approximately eight inches long overall. The knife is curved. The convex edge is smooth and sharpened, while the concave edge is serrated.

Defendant moved for a judgment of acquittal on the concealed weapon charge on the ground that there was an absence of evidence that the knife was a "dirk or dagger." The trial court denied the motion, and the jury returned a guilty verdict on the charge.

On appeal, defendant reiterates his contention that there is no evidence that the knife that he carried was a "dirk or dagger." According to defendant, a dirk is a specialized weapon characterized by a long, straight blade, while a dagger is a short knife used for stabbing. Defendant argues that

his knife fell within neither definition; indeed, he argues, the only evidence was that it was a common hunting knife. The state contends that it is conceivable that the knife *could be* used for stabbing and therefore it is arguably a dirk or dagger.

■      We review the evidence in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Pierce*, 153 Or App 569, 575, 962 P2d 35, *rev den* 327 Or 448 (1998).

■      ORS 166.240(1) declares it unlawful to carry

"concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force and commonly known as a switchblade knife, any dirk, dagger, ice pick, slungshot, metal knuckles, or any similar instrument by the use of which injury could be inflicted[.]"

The statute does not prohibit carrying a concealed knife. It only prohibits the carrying of three specific types of knife, namely, a switchblade, a "dirk," and a "dagger." The catchall phrase "or any similar instrument" does not refer to ordinary knives. As the Supreme Court explained in *City of Portland v. Lodi*, 308 Or 468, 475, 782 P2d 415 (1989):

"With respect to ORS 166.240(1), the section stating what may not be carried concealed regardless of intended use, the bill as introduced listed 'any knife other than a pocketknife' along with any switchblade knife, dirk and dagger among cutting or stabbing instruments, ending with a catchall reference to any other injurious instrument. The subcommittee amended the bill by removing all reference to knives other than dirks and daggers and those that it defined as switchblade knives. This was done after the director of the [Oregon District Attorneys' Association] proposed additional changes, which would have had the section specify knives 'having a fixed blade longer than three and a half inches' as well as switchblade knives. The implication is that *the committee made a decision not to outlaw the concealed carrying of any knife that was not a switchblade, dirk, or dagger.* We do not believe that after this decision to omit other knives, the committee nevertheless

meant to prohibit carrying an ordinary knife by the final catchall phrase."

(Emphasis added.) Thus, the determinative question in this case is whether there is evidence that the knife that defendant possessed reasonably could be called a "dirk" or a "dagger."

■■ Neither term is defined by the statute itself. In the absence of evidence to the contrary, we assume that the legislature intended the ordinary meanings of the terms to obtain. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). A "dagger" is defined as a "short knife used for stabbing—see ANLACE, DIRK, MISERICORD, PONIARD, STILETTO." *Webster's New Third Int'l Dictionary*, 570 (unabridged ed 1993). An "anlace" is a "tapering medieval dagger." *Id.* at 87. A "dirk" is commonly understood to mean a "long straight-bladed dagger formerly carried esp. by the Scottish Highlanders." *Id.* at 642. Similarly, a "misericord" is a "thin-bladed medieval dagger used to give the coup de grace." *Id.* at 1443. A "poniard" is a "dagger with a usu. slender triangular or square blade." *Id.* at 1763. And a "stiletto" is a "slender dagger with a blade that is thick in proportion to its breadth." *Id.* at 2243. Thus, a dagger is generally slender, straight, and coming to a point. Its function is to stab, historically to pierce armor. Daggers come in several varieties, depending on slight variations in the shape of the blade or the hilt. A dirk is one variety, being one that is long and straight, with a blade of approximately 18 inches. *See generally* 6 Encyclopedia Britannica, 984 (1971); *The Complete Encyclopedia of Arms and Weapons*, 153-58 (Leonid Tarassuk & Claude Blair eds. 1982).

In this case, there is a complete absence of evidence that the knife that defendant possessed was either a dirk or a dagger. Specifically, there is no evidence that it was designed for stabbing. To the contrary, the only evidence remotely establishing its purpose is the testimony of the officer, who stated that the knife was "more or less like a skinning knife, a hunting knife."

The state nevertheless argues that defendant's knife *could be* used for stabbing, and so the jury reasonably could have concluded that it was a dirk or dagger. The problem

with the argument, however, is that virtually anything with a point *could be* used for stabbing. Under the state's reasoning, a jury reasonably could conclude that the concealed possession of virtually any ordinary knife would be unlawful, a result that plainly would be contrary to the Supreme Court's decision in *Lodi*.

The state insists that, under our decision in *State v. Fredette*, 72 Or App 293, 296, 696 P2d 7 (1985), it is up to the jury to examine the weapon and determine whether its concealed possession is proscribed by ORS 166.240(1). In that case, the defendant was charged with carrying concealed "metal knuckles." The objects themselves were admitted into evidence. They were described as "a metal handle, with two finger holes and a hooked end." *Fredette*, 72 Or App at 295. An officer testified that they were slugging devices and demonstrated to the jury their use as such. The defendant argued that there was insufficient evidence that the devices were metal knuckles. We held that the officer's testimony was sufficient to establish that they fell within the meaning of the statutory term. *Id.* at 296. In *dictum* we suggested that, in any event, given the shape of the particular objects involved, the jury could have arrived at the same conclusion by looking at them. *Id.* We did not suggest that, in all cases, the jury is free to examine an object and, on that basis alone, determine that it is a weapon the concealed possession of which violates ORS 166.240(1).

We conclude that the trial court erred in denying defendant's motion for a judgment of acquittal on the concealed weapon charge.

Conviction for carrying a concealed weapon reversed; otherwise affirmed.