Argued and submitted November 25, 2013, reversed June 11, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANE PATRICK NELSON,
*Defendant-Appellant.*

Union County Circuit Court
M18559; A150337

330 P3d 644

Erin Snyder, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

Defendant was convicted of one count of carrying a concealed weapon, ORS 166.240, after police discovered a knife with a three-and-a-half-inch blade hanging from a chain around his neck. That statute provides, as relevant:

"(1) Except as provided in subsection (2) of this section, any person who carries concealed upon the person any knife having a blade that projects or swings into position by force of a spring or by centrifugal force, any dirk, dagger, ice pick, slungshot, metal knuckles, or any similar instrument by the use of which injury could be inflicted upon the person or property of any other person, commits a Class B misdemeanor."

The sole question in this appeal is whether the state introduced sufficient evidence about the knife to sustain defendant's conviction on the theory that the knife was a "similar instrument" within the meaning of that statute. We conclude that it did not and reverse.

The facts are not in dispute. Police discovered a concealed knife hanging from a chain around defendant's neck. The knife's blade was between three-and-a-half and three-and-three-quarter inches long; with the handle included, the knife measured eight inches. At defendant's bench trial, the state introduced the knife into evidence along with a photograph of it next to a ruler. The state did not elicit any testimony about the characteristics of the knife. At the conclusion of the trial, the trial judge examined the knife and made findings that the blade was "sharp" and that the tip of the blade was "very sharp." Defendant argued to the court that the evidence was insufficient as a matter of law to support a conviction under ORS 166.240. The court found defendant guilty based on its finding that the knife was a "similar instrument" under ORS 166.240(1). This timely appeal followed.

In reviewing a challenge to the sufficiency of the state's evidence on a particular element of a crime, our task "is to determine whether a trier of fact could find the required element has been proved beyond a reasonable doubt." *State v. Forrester*, 203 Or App 151, 155-56, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006) (and noting that

"[a]lthough certainly the best way to [preserve a claim of error concerning the legal sufficiency of the state's evidence at a bench trial] is to move for a judgment of acquittal, such a motion is not necessary as long as a defendant clearly raises the issue in closing argument").

Defendant points to *State v. Tucker*, 28 Or App 29, 33, 558 P2d 1244, *rev den*, 277 Or 491 (1977), in which we interpreted a prior version of ORS 166.240 and concluded that the so-called "catchall" provision of that statute was intended to encompass only those items that "are designed and intended primarily as weapons to inflict bodily injury or death." He urges that the state failed to present sufficient evidence to show that the knife was designed and intended primarily as a weapon. The state argues that the "design" interpretation arrived at in *Tucker* no longer reflects the proper test in light of the legislature's 1985 amendment of ORS 166.240. Or Laws 1985, ch 543, § 2. It advocates that the catchall provision instead encompasses items that share similar characteristics with an enumerated item and that are capable of inflicting a similar injury. In any event, argues the state, the evidence was sufficient to conclude that defendant's knife was a "similar instrument" under the catchall provision.[1]

In *Tucker*, the defendant was accused of carrying concealed "nunchaku sticks." 28 Or App at 31. He demurred to the indictment, arguing, in part, that ORS 166.240 (1977) was unconstitutionally vague. The then-operative version of the statute provided that

> "any person who carries concealed about his person in any manner, any revolver, pistol, or other firearm, any knife, other than an ordinary pocketknife, or any dirk, dagger, slung shot, metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person [is guilty of the offense]."

ORS 166.240(1) (1977). We noted the rule that a statute will be struck down for vagueness "only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction." *Tucker*, 28 Or App at 32 (internal

---

[1] The state does not argue that the knife was a "dirk" or "dagger" or any of the other enumerated items of ORS 166.240(1).

quotation marks omitted). We also noted that "rattail combs, letter openers, screwdrivers, ballpoint pens and like items which could be used to inflict injury" might constitute "any instrument" that could inflict injury on another person. *Id.* at 33. To avoid that sweeping interpretation—which we did not perceive as consistent with the legislative intent behind the statute—we arrived at the following interpretation of the catchall provision:

> "We construe this phrase to embrace those items which are similar in nature to the enumerated objects, and are designed and intended primarily as weapons to inflict bodily injury or death. Accordingly we hold this statute applies to items not enumerated which are designed and intended primarily to inflict injury on the person or property of another."

We concluded that "nunchaku sticks" met that definition.

The legislature amended ORS 166.240(1) in 1985.[2] Or Laws 1985, ch 543, § 2. The legislature removed the prohibitions on carrying "any" concealed "revolver, pistol, or other firearm" and on carrying "any knife, other than an ordinary pocket knife." The legislature also specified two new criminal acts: carrying "any" concealed "knife having a blade that projects or swings into position by force of a spring or by centrifugal force and commonly known as a switchblade knife" and carrying any concealed "ice pick." With regard to the catchall provision of ORS 166.240, the legislature added the narrowing term "similar" to prohibit the concealed carrying of "any similar instrument."

The Oregon Supreme Court confronted the amended version of the statute in *City of Portland v. Lodi*, 308 Or 468, 782 P2d 415 (1989). There, a City of Portland ordinance prohibited carrying a knife with a blade longer than a specified limit. The question on appeal was whether ORS 166.240 preempted the city's ordinance. In concluding that the city's ordinance was preempted by the statute, the court noted the following legislative history behind the 1985 amendment:

> "With respect to ORS 166.240(1), the section stating what may not be carried concealed regardless of intended

---

[2] It did so again in 1989 and 1999. Or Laws 1989, ch 839, § 21; Or Laws 1999, ch 1040, § 15. Neither of those amendments bears on the issues in this case.

use, the bill as introduced listed 'any knife other than a pocketknife' along with any switchblade knife, dirk and dagger among cutting or stabbing instruments, ending with a catchall reference to any other injurious instrument. The subcommittee amended the bill by removing all reference to knives other than dirks and daggers and those that it defined as switchblade knives. This was done after the director of [the Oregon District Attorneys Association] proposed additional changes, which would have had the section specify knives 'having a fixed blade longer than three and a half inches' as well as switchblade knives. The implication is that the committee made a decision not to outlaw the concealed carrying of any knife that was not a switchblade, dirk, or dagger. We do not believe that after this decision to omit other knives, the committee nevertheless meant to prohibit carrying an ordinary knife by the final catchall phrase."

*Id.* at 475.

In *State v. McJunkins*, 171 Or App 575, 15 P3d 1010 (2000), the state had charged that the defendant had violated the statute by carrying a concealed "dirk or dagger." A police officer testified that the knife was "'more or less like a skinning knife, a hunting knife.'" *Id.* at 577. The only other facts were that the knife was approximately eight-inches long, and had a curved, fixed blade; the convex edge of the blade was smooth and sharpened, the concave edge was serrated. The defendant moved for a judgment of acquittal, contending that there was insufficient evidence that the knife was a "dirk" or "dagger." In reversing the trial court's denial of that motion, we examined the definitions of those two terms, noting that "a dagger is generally slender, straight, and coming to a point. Its function is to stab, historically to pierce armor. *** A dirk is one variety, being one that is long and straight, with a blade of approximately 18 inches." *Id.* at 579. After citing the legislative history discussed in *Lodi*, we concluded that "there [was] a complete absence of evidence that the knife that defendant possessed was either a dirk or a dagger. Specifically, there is no evidence that it was designed for stabbing." *Id.* We also rejected the state's argument that the jury could infer that the knife was a dirk or a dagger because the knife *could be* used for stabbing, stating:

"The problem with [that] argument * * * is that virtually anything with a point *could be* used for stabbing. Under the state's reasoning, a jury reasonably could conclude that the concealed possession of virtually any ordinary knife would be unlawful, a result that plainly would be contrary to the Supreme Court's decision in *Lodi.*"

*Id.* at 579-80 (emphasis in original).

Finally, in *State v. Ruff,* 229 Or App 98, 211 P3d 277, *rev den,* 347 Or 43 (2009), the issue was whether an arresting officer had reasonable suspicion to believe that the defendant had violated ORS 166.240. The police had received a report that a man had been swinging a "samurai type sword around" in a park and was also carrying it under his coat. An officer observed the sword and estimated that it was between three-and-a-half and four feet in length. The defendant argued that a sword did not fall within the items described by ORS 166.240 and that the officer could not therefore have had a reasonable suspicion that the defendant had committed a crime. We first concluded that a sword did not meet the definitions of a "dirk" or "dagger" that we had adopted in *McJunkins,* stating, "While a three-and-one-half foot long samurai sword is not a dirk or a dagger, it could qualify as an 'other similar instrument' for purposes of ORS 166.240(1) if it also is designed for stabbing." *Ruff,* 229 Or App at 104. We then examined the definition of a sword and concluded that the officer could reasonably suspect that "the sword in defendant's possession * * * was designed primarily to inflict injury on the person or property of another by stabbing, similar to the function of a dirk or dagger, and that the sword had been concealed on defendant's person."[3] *Id.* at 105. We also cited the legislative history behind the 1985 amendment:

"Because *Tucker* was decided in 1977, the 1985 legislature would have been aware of our conclusion that the statute applied to any object not enumerated in the statute that is designed and intended primarily to inflict injury

_____

[3] "By ordinary definition, a sword is '**1 a :** a weapon with a long blade for cutting or thrusting set in a hilt usually terminating in a pommel and often having a tang or a protective guard where the blade joins the handle * * * **2 a :** an instrument of destruction.' [*Webster's Third New Int'l Dictionary* 2314 (unabridged ed 2002)]." *Ruff,* 229 Or App at 105 (omission in *Ruff*).

on the person or property of another. In light of the 1985 amendments to the statute, as well as the language of the present version of ORS 166.240(1), we conclude that the legislature *intended that the statute be construed comprehensively to apply to 'any' object designed and intended primarily to inflict injury on a person or property* that is capable of being concealed upon the body of a person without regard to whether the object is relatively small or large."

*Ruff*, 229 Or App at 107 (footnote omitted; emphasis added).[4]

With that overview, we return to the parties' arguments in the present case. Defendant urges that this case involves a relatively straightforward application of the principle announced in *Tucker*; he relies primarily on *McJunkins* for the proposition that the state failed to introduce sufficient evidence that the knife in this case was primarily designed and intended to inflict injury. The state counters that the *Tucker* test is no longer valid in light of the 1985 amendment of ORS 166.240. It argues that, by adding ice picks to the list of prohibited items, the legislature demonstrated its intention to reject *Tucker's* interpretation of the catchall provision. Because one of the enumerated items is not designed and intended to inflict bodily injury, reasons the state, the legislature must have had some other "similar[ity]" in mind than design as a weapon when it enacted the 1985 amendment. The state proposes that the catchall provision, as properly understood, encompasses any item that "has similar characteristics to a listed weapon and that is therefore capable of causing similar injury as a listed weapon." The state is incorrect.

The 1985 legislature did not intend to criminalize concealing and carrying all knives, but instead only dirks, daggers, switchblades (as defined), and other "similar instruments." *Lodi*, 308 Or at 475 ("We do not believe that after this decision to omit other knives, the committee nevertheless meant to prohibit carrying an ordinary knife by the

---

[4] Our dissenting colleague agreed with the majority that an unenumerated item must be "designed to produce personal injury" to fall within the catchall provision, but would have held that a sword was not a "similar instrument" under ORS 166.240 because a sword is a large stabbing weapon and is thus dissimilar to switchblades, daggers, dirks, and ice picks, which are relatively small stabbing weapons. *Id.* at 108 (Sercombe, J., dissenting).

final catchall phrase."); *McJunkins*, 171 Or App at 578 ("The catchall phrase 'or any similar instrument' does not refer to ordinary knives."). As we noted in *Ruff*, the 1985 legislature was aware of our interpretation in *Tucker*. The 1985 legislature also necessarily contemplated that certain knives would be sufficiently "similar" to the enumerated items, that others would not, and that a principle to distinguish knives fitting one category or the other would be necessary. On that point, it is noteworthy that *Tucker* had already announced such a distinguishing principle, but nowhere in the text of the statute or in the legislative history presented by the state did the legislature expressly state an intention to adopt a different principle.

That observation, of course, is not dispositive, for it is still conceivable that the 1985 legislature may have intended to adopt a different test when assessing whether a knife is a "similar instrument" under the catchall provision. Under the state's proposed interpretation, the 1985 legislature intended for the similarity inquiry to focus on the characteristics of the knife in question: Does the knife have "similar" characteristics to the expressly prohibited items and is it capable of producing an effect (injury) "similar" to those items?

In rejecting the state's interpretation, we need look no further than the intention that it ascribes to the 1985 legislature.[5] If a knife was a "similar instrument" to an enumerated object merely because it had "similar" characteristics and was capable of producing a "similar" injury to a dirk, dagger, or ice pick—a stab wound—nearly every knife in existence would fall under ORS 166.240(1). In other words, the state's theory is that the legislature intended the catchall provision of ORS 166.240(1) to encompass "ordinary" knives, a result that the Supreme Court has explicitly stated was *not* intended by the 1985 legislature. *Lodi*, 308 Or at 475; *McJunkins*, 171 Or App at 578 ("The catchall phrase 'or any similar instrument' does not refer to ordinary knives."). As we explained in *McJunkins* in terms that

---

[5] We have examined the legislative history proffered by the state surrounding the 1985 amendment of ORS 166.240 and find it of minimal use to our analysis.

are equally applicable here, "The problem with the [state's] argument * * * is that virtually anything with a point *could be* used for stabbing. Under the state's reasoning, a jury could conclude that the concealed possession of virtually any ordinary knife would be unlawful, a result that plainly would be contrary to the Supreme Court's decision in *Lodi.*" 171 Or App at 579-80 (emphasis in original).

What is more, the state's argument ascribes to the 1985 legislature the intention to enlarge the universe of prohibited concealed knives by requiring that a knife that is not a dirk, dagger, or switchblade be examined for similarities with an "ice pick." That is, the state suggests, the legislature intended for a concealed knife's "similar[ity]" to be determined by reference to certain common denominators of a dirk, dagger, and ice pick—*viz.*, something with a point, capable of inflicting a stab wound. However, in light of the fact that ORS 166.240(1) enumerates two types of fixed-blade instruments (dirks and daggers), it does not stand to reason that the legislature meant to drastically expand the universe of prohibited knives by requiring an examination of the similarities between a knife and the shared features of a dirk, dagger, *and* ice pick. Instead, and as we have suggested in the past, it is eminently more sensible to conclude that the legislature intended for the "similarity" of a knife with a fixed blade to be assessed with reference to the types of fixed-blade knives that are identified in the statute. *See Ruff,* 229 Or App at 104 ("While a three-and-one-half foot long samurai sword is not a dirk or a dagger, it could qualify as an 'other similar instrument' for purposes of ORS 166.240(1) if it also is designed for stabbing."); *McJunkins,* 171 Or App at 579 (stating that a dirk is a type of dagger and that a dagger's "function is to stab"). In short, if the legislature intended the analysis and result the state suggests, it would have cut to the chase.[6]

---

[6] Leaving knives aside, we fail to see how the state's proposed interpretation would not criminalize carrying concealed "rattail combs, letter openers, screwdrivers, ballpoint pens and like items." *Tucker,* 28 Or App at 33. In 1977 we concluded that the legislature did not intend for the catchall provision of ORS 166.240 to encompass a smorgasbord of everyday items. We do not perceive, in the 1985 legislature's addition of "ice pick" to the enumerated items, the intention to effect so drastic a change to that understanding.

For those reasons, we reaffirm that, when the state attempts to prove that a knife is a "similar instrument" under the catchall provision of ORS 166.240, the state must introduce sufficient evidence for a reasonable factfinder to find that the knife was "designed and intended" primarily as a weapon. In this case, there was no evidence from which a reasonable factfinder could conclude that the knife was designed and intended primarily as a weapon. *Accord McJunkins*, 171 Or App at 579 (a physical description of a knife and the knife itself do not constitute sufficient evidence to prove that a knife is designed for stabbing).

Reversed.