Submitted September 30, conviction for felon in possession of a restricted weapon reversed; remanded for resentencing; otherwise affirmed November 19, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COLIN G. BEHEE,
*Defendant-Appellant.*

Benton County Circuit Court
CM1120648; A152813

340 P3d 127

Peter Gartlan, Chief Defender, and Susan Fair Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Erin K. Galli, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

Defendant appeals a judgment of conviction for being a felon in possession of a restricted weapon, ORS 166.270(2). The issue on appeal is whether the object that defendant possessed falls within the meaning of "metal knuckles" for purposes of ORS 166.270(2). Defendant moved for a judgment of acquittal on the ground that the object did not constitute "metal knuckles." The trial court denied the motion. We conclude that the trial court erred, and, therefore, we reverse his conviction for violating ORS 166.270(2).

The facts are undisputed. On May 9, 2011, Corvallis Detective Duncan obtained a search warrant for defendant's home related to an investigation of child pornography. During the search, Duncan and other officers found evidence of child pornography on defendant's computer and on a DVD. Police also searched a backpack belonging to defendant and found the object at issue here, which we describe further below.

In addition to the multiple child pornography counts, which are not at issue in this appeal, defendant was charged with one count of violating ORS 166.270(2), which provides:

> "Any person who has been convicted of a felony under the law of this state or any other state, * * * who owns or has in the person's possession or under the person's custody or control any instrument or weapon having a blade that projects or swings into position by force of a spring or by centrifugal force or any blackjack, slungshot, sandclub, sandbag, sap glove, *metal knuckles* or an Electro-Muscular Disruption Technology device as defined in ORS 165.540, or who carries a dirk, dagger or stiletto, commits the crime of felon in possession of a restricted weapon."

(Emphasis added.) The state alleged that the object found in defendant's backpack constituted "metal knuckles" within the meaning of the statute.

At trial, no particular name was given to the object. On appeal, defendant compares the object to "ninja climbing claws," as reflected in an online advertisement, a printed

copy of which was attached to defendant's brief. The image of the object contained in the record is substantially similar to the object depicted and described in the advertisement. In light of that similarity, and because the state takes no issue with either defendant's description of the object or the online advertisement, we refer to the object as "climbing claws" throughout the remainder of this opinion.

The climbing claws comprise an elongated, oval-shaped metal band with metal spikes, or claws, on one side. The band can slide over the fingers to encircle the out-stretched hand, but it does not have separate finger holes. The claws are between one-half inch and one inch in length and are bent. The band connects to a separate wristband by way of a cloth or leather strap. At trial, defendant's wife testified that defendant used the object for climbing trees, although she noted that she had not actually seen defendant climb trees with it.

On direct examination, the state asked Duncan to describe the climbing claws that he discovered in defendant's backpack:

"DUNCAN:  They're a type of weapon where you can strap them on your hand. My best description was similar to a brass knuckle, to where when you were to hit somebody with it, it would inflict some injury.

"PROSECUTOR:  And do you know what the—what the composition of these items is, what they're made out of?

"DUNCAN:  Metal.

"PROSECUTOR:  And do you know what type—what part of the hand they cover when they're worn?

"DUNCAN:  It'd be to cover the knuckle area."

Duncan was also questioned about his general knowledge of metal knuckles:

"PROSECUTOR:  Generally what is the function of metal knuckles?

"DUNCAN:  It's simply to—when you use them rather than just a regular punch it's going to actually—it's there to inflict more injury than just a regular punch could do.

"PROSECUTOR: And in your training or experience if someone punches somebody without knuckles does it present a risk to their own hand, the person who's punching?

"DUNCAN: Correct.

"PROSECUTOR: So do metal knuckles like that serve any protective function?

"DUNCAN: They can.

"PROSECUTOR: And who would they protect, the person who's being hit, it doesn't hurt them as bad, or the person who's throwing the punch?

"DUNCAN: It'd be the person throwing the punch."

On cross-examination, defense counsel asked Duncan to compare the climbing claws to brass knuckles:

"DUNCAN: Those are your traditional brass knuckles. [In response to defense counsel's showing actual brass knuckles to Duncan on the stand.]

"DEFENSE COUNSEL: And there was nothing like that in [the backpack], was there?

"DUNCAN: No."

Defendant moved for a judgment of acquittal, arguing that the climbing claws were not "metal knuckles" under the statute. The state argued otherwise:

"PROSECUTOR: *** The [s]tate's position is also that there is testimony from an officer who said that these are metal, they can be worn over the knuckles and they can be used to protect the knuckles while punching. They are metal knuckles and the state believes that that is an issue that can go to the jury based on both that testimony and upon the nature of the items themselves. The jury can look at them and decide whether they are in fact metal knuckles or whether they're something else.

"* * * * *

"DEFENSE COUNSEL: Well, I—I mean, obviously anything could be used to protect. I'm saying that it's clear from the object that they're not knuckles. They're worn on the inside of the hand. All you have to do is look at the object. These things are the inside of the hand. They're not meant to be on the outside. And it's also clear, although I

would consider it—you know, it's obviously a gaming type of device for people who are into being ninjas[.]

"(Court looking at device.)

"THE COURT:   This way, do you mean?

"PROSECUTOR:   The strap goes down on the wrist I think to keep them from losing them."

The trial court denied defendant's motion, concluding that whether the climbing claws were metal knuckles was a question for a jury:

"THE COURT:   I suppose it depends on which way you wear them. If you wear them this way they go over your knuckles. You know, I think that this is certainly something that is good argument for the jury about whether or not these would be considered metal knuckles under the law. They certainly have the benefit of Exhibit 102, which is what commonly is referred to as brass knuckles, they have the testimony of [defendant's wife] about what they were used for, and then they have the testimony of the police officers, and they have the exhibit themselves, so I believe in terms of the motion for a judgment of acquittal if I view the evidence in the light most favorable to the [s]tate there is at least I believe a question of fact about whether or not these would be constituted as metal knuckles and so the motion for a judgment of acquittal is denied. I do believe that it is a question for the jury to determine."

Defendant was convicted on all charges and received a sentence of 68 months in prison, which included a six-month sentence on the felon-in-possession conviction. As noted, he challenges only that conviction on appeal. In so doing, defendant assigns error to the trial court's denial of his motion for judgment of acquittal, reprising his argument that the climbing claws do not constitute "metal knuckles" under ORS 166.270(2).

In reviewing the denial of a motion for judgment of acquittal, "we view the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and making reasonable credibility choices, could have found, beyond a reasonable doubt, the essential elements of the offense." *State v. Goddard*, 178 Or App 538, 541, 37 P3d 1046 (2002) (quoting

*State v. Metcalfe,* 172 Or App 501, 503, 19 P3d 374 (2001)). "Whether particular circumstantial evidence is sufficient to support a particular inference, however, is a legal question for a court to decide." *State v. Bivins,* 191 Or App 460, 467, 83 P3d 379 (2004) (citing *Delgado v. Souders,* 334 Or 122, 135, 46 P3d 729 (2002)).

The term "metal knuckles" is not defined in ORS 166.270 or anywhere else in Oregon statutes. "In the absence of a statutorily provided definition, we ordinarily assume that the legislature intended the words of the statute to carry their plain, natural, and ordinary meanings." *State v. Spears,* 223 Or App 675, 683, 196 P3d 1037 (2008) (citing *PGE v. Bureau of Labor & Industries,* 317 Or 606, 611, 859 P2d 1143 (1993)).

Only one Oregon case appears to have considered the ordinary meaning of "metal knuckles." In *State v. Fredette,* 72 Or App 293, 295, 696 P2d 7 (1985), the defendant possessed two identical objects that "consisted of a metal handle, with two finger holes and a hooked end" and was charged with possessing a concealed weapon, under ORS 166.240.[1] At trial, the defendant described the objects as "skinning knives used for animal hides," but there were no blades in the objects when they were seized. *Id.* A police officer testified that he was "unfamiliar with the objects but thought they were some sort of slugging device," and the officer "demonstrated two ways they could be used as such." *Id.* at 295. We upheld the jury's guilty verdict. *Id.* at 296. In doing so, we cited definitions of "brass knuckles" in *Black's Law Dictionary* 170 (5th ed 1979) (a "weapon worn on the hand for the purposes of offense and defense, so made that in hitting with the fist considerable damage is inflicted") and *Webster's Third New Int'l Dictionary* 269 (unabridged ed 1976) (a "set of four metal rings or guards attached to a transverse piece and worn over the front of the doubled fist as a weapon"). *Fredette,* 72 Or App at 296. Based on those definitions, we concluded that, in light of the officer's testimony, the jury could have found that the objects were metal knuckles. *Id.*

---

[1] Metal knuckles are listed among the concealed weapons prohibited under ORS 166.240.

In another case examining the ordinary meaning of a restricted weapon, *State v. McJunkins*, 171 Or App 575, 579-80, 15 P3d 1010 (2000), we held that, in order for an object to constitute a concealed weapon under ORS 166.240, there must be some evidence that the object was designed or intended to be used as such; it is not enough that the object *could* be used that way. In *McJunkins*, the defendant was convicted of possession of a "dirk or dagger," a concealed weapon, in violation of ORS 166.240. 171 Or App at 577. At trial, the only testimony presented regarding the knife was from one of the arresting officers, who stated, "'It's more or less like a skinning knife, a hunting knife.'" *Id*. The defendant moved for a judgment of acquittal and argued that there was no evidence that the particular knife he possessed was a "dirk or dagger." *Id*. The trial court denied the defendant's motion, and the defendant appealed. *Id*. at 577.

In reversing the defendant's conviction, we framed "the determinative question" as "whether there [was] evidence that the knife that defendant possessed reasonably could be *called* a 'dirk' or a 'dagger.'" *Id*. at 579 (emphasis added). Relying on *Webster's*, 6 *Encyclopedia Britannica* 984 (1971), and *The Complete Encyclopedia of Arms and Weapons*, 153-58 (Leonid Tararreh & Claud Blair eds 1982), we explained that, the function of a dagger—which "is generally slender, straight, and coming to a point"—is "to stab, historically to pierce armor" and that a "dirk is one variety [of dagger], being one that is long and straight, with a blade of approximately 18 inches." *McJunkins*, 171 Or App at 579. We then observed that "there is no evidence that [the defendant's knife] was designed for stabbing. To the contrary, the only evidence remotely establishing its purpose is the testimony of the officer, who stated that the knife was 'more or less like a skinning knife, a hunting knife.'" *Id*.

We rejected the state's view that defendant's knife was "arguably a dirk or dagger" because it *could be* used for stabbing, noting that "virtually anything with a point *could be* used for stabbing," and that "[u]nder the state's reasoning, a jury reasonably could conclude that the concealed possession of virtually any ordinary knife would be unlawful." *Id*. at 579-80 (reasoning that the legislature's decision to specify

three prohibited knives in the statute—switchblades, dirks, and daggers—was indicative of an intent not to prohibit the concealed carrying of other knives) (emphasis in original). We also rejected the view that, under *Fredette*, it is always for the jury to resolve whether an object meets the statutory definition of a restricted weapon. *Id.* at 580. We noted that, in *Fredette*, the officer's testimony "was sufficient to establish that [the objects] fell within the meaning of the statutory term." *Id.* ("We did not suggest that, in all cases, the jury is free to examine an object and, on that basis alone, determine that it is a weapon the concealed possession of which violates [the statute].").

In light of the foregoing, we return to the case at hand. Defendant cites dictionary definitions of "brass knuckles"[2] to show that the climbing claws he possessed are distinct in design and purpose from metal knuckles. Those definitions, variously, describe a "set of four metal finger rings or guards attached to a transverse piece and worn over the front of the doubled fist for use as a weapon," *Webster's* at 269; a "band of metal with four holes that fits over the upper fingers and that is gripped when a fist is made, used for increasing the effect of a blow with the fist," *Webster's Encyclopedic Unabridged Dictionary* 254 (1996 ed); and a "weapon worn on the hand for the purposes of offense or defense, so made that in hitting with the fist considerable damage is inflicted," *Black's Law Dictionary* 188 (6th ed 1990). Defendant points out that his climbing claws do not have separate holes for each finger and are not intended to be used for punching with a fist.

The state relies on the fact that the object is metal, is meant to be worn "on the hand," and can be worn to cover "the knuckle area"; the state also cites Duncan's testimony that the climbing claws are "a type of weapon where you can strap them on your hand" and "similar to a brass knuckle" in that they would "inflict more injury than just a regular punch could do." The state contends that "the defining characteristic of 'metal knuckles' is not whether the item has

---

[2] In *Fredette*, we implied that the terms "brass knuckles" and "metal knuckles" can be used interchangeably, 72 Or App at 296, and we perceive no reason not to do so.

finger holes, but whether the item is a weapon worn on the hand such that a punch with a fist would inflict considerable damage."

We agree with the state that the absence of individual finger rings on the climbing claws is not dispositive. Although, as noted above, some common definitions of "brass knuckles" or "metal knuckles" refer to separate finger holes or rings, not all definitions do, and we affirmed the defendant's conviction in *Fredette* even though the object in that case lacked a separate hole for each finger. Rather, we agree with the state that the "defining characteristic" of "metal knuckles" is the presence of a metal band (or individual rings connected together), worn over the fingers, designed for enhancing the effectiveness of a punch with a closed fist. Under that definition, however, defendant's climbing claws are not "metal knuckles," because no rational person would think that the purpose of the climbing claws is to inflict a more damaging punch.

It is obvious from the record that the climbing claws are intended and designed to be worn with the spikes on the palm side of the hand, so that the spikes are bent downward toward the wrist. Defendant's wife testified that defendant intended to use the object for climbing trees. If one were to make a fist and punch someone while wearing the climbing claws the way they are plainly meant to be worn, the most likely result would be to damage one's own fingers or palm with the claws.

The trial court allowed the evidence to go to the jury on the apparent belief that "it depends on which way you wear them," and the state argues on appeal that the climbing claws *could* be worn in a way that would protect the knuckles while punching. Even assuming that that is true, whether an object *can* be used for a particular purpose is not the correct inquiry under ORS 166.270(2). *See McJunkins*, 171 Or App at 579-80 (explaining that "virtually anything with a point *could be* used for stabbing" and that, "[u]nder the state's reasoning, a jury reasonably could conclude that the concealed possession of virtually any ordinary knife would be unlawful"). A key ring or heavy wristwatch could also be used to slide over the fingers and protect the

knuckles while punching. But those objects are not "metal knuckles," even if they could theoretically further the same purpose.

In short, the climbing claws that defendant possessed have a demonstrable purpose that metal knuckles do not; moreover, their design is inconsistent with the essential characteristic of metal knuckles, which is to enable more powerful punching. Accordingly, we conclude that the trial court erred in denying defendant's motion for a judgment of acquittal on the felon-in-possession count.

Conviction for felon in possession of a restricted weapon reversed; remanded for resentencing; otherwise affirmed.